IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JACKIE MARTINEZ, Personal
Representative, on behalf of the Estate of
RUSSELL MARTINEZ,

    Plaintiff,

vs.                                                   Case No. 14-cv-00534 KG/WPL

JOSEPH SALAZAR, et al.,

    Defendants.

**PLAINTIFF'S MOTION FOR SANCTIONS FOR
DEFENDANTS' FAILURE TO PRESERVE TASER DATA**

Plaintiff, by and through undersigned counsel, respectfully requests that the Court impose sanctions against Defendants the City of Espanola, the Espanola Department of Public Safety, and Joseph Salazar for their failure to take any action to preserve Defendant Joseph Salazar's Taser data. Defendants oppose this motion.

**BACKGROUND**

This case stems from an incident on May 11, 2012, when Espanola Police Department ("EPD") officers pulled Russell Martinez, a paraplegic, from his car and tased him multiple times. (*See* Doc. 88.) On August 6, 2012, Plaintiff sent the City of Espanola a letter describing the incident, announcing his intent to sue, and demanding that the City preserve all evidence, including all electronically-stored information, relevant to the incident. (*See* Doc. 172, Ex. 1.) Plaintiff filed suit and discovery commenced.

On October 6, 2015, Plaintiff moved to compel the production of electronic data from Defendant Joseph Salazar's Taser. (Doc. 107 at 2-5.) Defendants could not locate the serial

number for the Taser used by Defendant Salazar, so for evidentiary purposes, the Taser was effectively lost. (*Id.* at 3.) Plaintiff also sought "limited additional discovery, in the form of a 30(b)(6) deposition and/or interrogatories, to determine the steps taken to preserve Defendant Salazar's Taser data." (*Id.* at 5.) Plaintiff pointed out that such additional discovery would help determine whether, and what type of, sanctions would be appropriate. (*Id.*) In response, Defendants claimed that they were not at fault for failing to preserve Defendant Salazar's Taser data because a "disgruntled employee," upon his retirement from the EPD in 2011, had taken all documents memorializing the issuance of Tasers to EPD officers. (Doc. 115 at 2.) Defendants claimed that, "in all likelihood," the Taser Defendant Salazar used against Mr. Martinez on May 11, 2012 was "still being used in the field." (*Id.*) In reply, Plaintiff pointed out that Defendants' proffered excuse made no sense because the alleged rogue employee had left the EPD prior to Defendant Salazar's employment. (Doc. 124 at 2.) Plaintiff urged the Court to order Defendants to expand their search for the electronic data to include all Tasers in the possession of the EPD. (*Id.*) Plaintiff reiterated that, if Defendant Salazar's Taser could not be found, "Mr. Martinez should be entitled to limited additional discovery to determine what steps, if any, Defendants took to preserve the relevant evidence" upon receipt of Mr. Martinez's August 6, 2012 preservation demand. (*Id.* at 3.)

On January 20, 2016, the Court ordered Defendants to produce electronic data from "all Tasers within their possession and all Taser data to which they have access," with the goal of locating the Taser Defendant Salazar used against Mr. Martinez on May 11, 2012. (Doc. 142 at 2.) The Court "reserve[d] ruling on Martinez's request for an adverse inference and his request for additional discovery until after the Defendants have complied with this Order." (*Id.* at 3.) On February 9, 2016, Defendants produced electronic data for 29 Tasers, but because of clock

offsets and the fact that the serial number of Defendant Salazar's Taser was unknown, none of the Taser data could be linked to the May 11, 2012 incident. (*See* Doc. 172 at 3–5.)

Plaintiff then moved for a 30(b)(6) deposition regarding Defendants' efforts to preserve Defendant Salazar's Taser, (Doc. 172), which Defendants opposed, (Doc. 177.) In reply, Plaintiff pointed out that had Defendants taken the simple steps of identifying the serial number and clock setting of the Taser at any time after they received the preservation letter, the data would likely not have been lost. (Doc. 178 at 2.) When the parties appeared at oral argument ordered by the Court, (Doc. 181), Defendants belatedly consented to allowing the deposition and the Court subsequently issued an order granting Plaintiff's motion. (Doc. 192.)

The deposition took place on June 3, 2016. The City designated Francisco Galvan, who is Records Supervisor and Evidence Custodian at the Espanola Department of Public Safety, to testify on its behalf.[1] (Ex. 1 at 4:8–5:2.) Mr. Galvan testified that the City received Mr. Martinez's preservation demand on August 6, 2012. (*Id.* at 9:6–10.) The City scanned the letter and placed it into an electronic LaserFiche filing system three days later. (*Id.* at 9:12–18.) The City's normal process is to then disseminate preservation demands internally. (*Id.* at 10:4–12.) In this case, however, the City did not disseminate the letter at all. (*Id.* at 11:13–12:16; 30:24–31:1; 31:22–32:7.) And the City, even though it was aware of a pending lawsuit, did not issue any type of litigation hold. (*Id.* at 31:12–32:23).

Moreover, Mr. Galvan also testified that the only thing the EPD would have done had it received the preservation demand would have been to place a copy of the letter in the evidence locker. (*Id.* at 49:17–50:3.) The EPD would not have made *any* effort to locate the serial number

---

[1] Mr. Galvan explained that the EPD, along with the fire department, is part of the Department of Public Safety, and is thus not a separate entity. (Ex. 1 at 4:25–5:9.)

for Defendant Salazar's Taser, much less preserve any of its electronic information. (*Id.* at 51:15–20.) Finally, Mr. Galvan testified that Defendant Salazar violated EPD policy by failing to complete a Taser Use Report related to the incident. (*Id.* at 45:12–46:7). In fact, Mr. Galvan confirmed that Defendant Salazar never completed any Taser Use Reports while he was an EPD officer, contrary to EPD policy. (*Id.* at 45:24–46:4.) Had Defendant Salazar completed a Taser Use Report, as was required, that report would have revealed the serial number of the Taser issued to him. (*See* Doc. 107, Ex. H.)

## ARGUMENT

**I.    Defendants' Utter Disregard of Their Duty to Preserve Evidence Favors a Finding of Bad Faith.**

The duty to preserve evidence is triggered when a party is put on notice that litigation is reasonably foreseeable. *See, e.g.*, *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). It should go without saying that a letter noticing a person's intent to sue and specifically demanding the preservation of evidence necessarily triggers the duty to preserve evidence. *See, e.g.*, *McCargo v. Tex. Roadhouse, Inc.*, No. 09-CV-02889-WYD-KMT, 2011 WL 1638992, at *4 (D. Colo. May 2, 2011). Once the duty attaches, "[c]ases across the country confirm that the duty to preserve means *action* must be taken to preserve evidence, meaning that it is not lost, destroyed, inadvertently or negligently overwritten, or intentionally wiped out, and that it is available to be produced to the other side." *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1195 (D. Utah 2011) (emphasis added).

In *Swofford v. Eslinger*, 671 F. Supp. 2d 1274 (M.D. Fla. 2009), the court found bad faith when a sheriff's office failed to take any steps to preserve relevant evidence of a police shooting. Upon receiving preservation demands, the sheriff's office did nothing to ensure the preservation

4

of evidence besides distributing the demands to several senior officials. *Id.* at 1281. Those officials ignored the notices, never issued a litigation hold, and allowed, *inter alia*, the loss of relevant data from a laptop and a department e-mail system. *Id.* at 1281, 1284–85. The court found that it was

> not a circumstance of inadvertent destruction of evidence or negligence in the loss of material data from which [it was] being asked to infer bad faith. Rather, it [was] a case of knowing and willful disregard for the clear obligation to preserve evidence that was solely within the possession and control of the Defendants and whose contents have no other source than that which has now been spoliated.

*Id.* at 1282. The court thus found bad faith to be clear, *id.*, and sanctioned the defendants, *id.* at 1284–85.

The only difference between this case and *Swofford* is that, in this case, the City did even less in response to the preservation demand than the defendants in *Swofford*. Here, the City never forwarded the preservation demand to anybody, let alone to anybody at the EPD, and did not put in place any type of litigation hold. The City's complete failure to institute a litigation hold, alone, indicates either gross negligence or intentional misconduct. *See, e.g.*, *Philips*, 773 F. Supp. 2d at 1206–1207 (finding bad faith when corporation failed to institute litigation hold, failed to follow up on litigation hold, and failed to collect relevant documents from key employees). Regardless, Mr. Galvan's testimony confirms that the City's actions were willful. Mr. Galvan testified that, had the EPD received the preservation demand, its reaction would have been identical to that of the defendants in *Swofford*—it would have effectively disregarded it and taken no steps to ensure the preservation of relevant evidence. (Ex. 1 at 49:17–50:3.) Thus, because the facts are just as, if not more, egregious than those in *Swofford,* this Court should find that Defendants acted in bad faith.

Had Defendants, in August of 2012, taken the most rudimentary steps to secure—or even identify—Defendant Salazar's Taser, the relevant electronic data would likely be available today. This Court can, and should, infer bad faith from the EPD's purposeful refusal to comply with the most basic duty to preserve relevant evidence. This is the very definition of bad faith in the discovery context—refusing to preserve evidence that might be helpful to an adversary when put on notice of pending litigation. Because Defendants have willfully ignored their obligations, the Court should impose a serious sanction.[2]

## II.     Plaintiff Is Prejudiced by Defendants' Abject Failure to Preserve Relevant Records.

When a defendant breaches its preservation obligation in bad faith, prejudice to the plaintiff may be presumed. *Philips*, 773. F. Supp. 2d at 1202.  Even without such an inference, Plaintiff shows prejudice. Defendant Salazar's Taser data would have been relevant to at least two contested issues: (1) how many times he used his Taser on Mr. Martinez; and (2) how frequently he used his Taser on other occasions. Defendant Salazar's account of the incident conflicts with Mr. Martinez's account on several points—one of them being how many times he tased Mr. Martinez. That inquiry is relevant to, *inter alia*, Defendant Salazar's credibility and whether he used a reasonable degree of force. *See, e.g.*, *Perea v. Baca*, 817 F.3d 1198, 1205 & n.4 (10th Cir. 2016). Because Defendants failed to preserve relevant information, it is now impossible to determine, from objective evidence, whose account is correct. It is also now impossible to determine how many times Defendant Salazar used his Taser on other occasions,

---

[2]     This finding should apply equally to Defendant Salazar. Defendant Salazar violated EPD policy by failing to complete a Taser Use Report following the incident. (Ex. 1 at 45:12–46:7.) Had he done so, the report would have listed the Taser's serial number, and the relevant electronic evidence would likely be available today. And Defendant Salazar's failure to complete the Taser Use Report was not a once-time lapse in judgment—he ***never*** completed any Taser Use Reports, despite being required to do so. (*Id.*) As such, Defendant Salazar shares in the blame for the loss of relevant evidence, and the sanctions should apply equally to him.

which would have shed light on whether, during his deposition, he falsely testified regarding his Taser use. (*See* Doc. 172 at 3–5.)

These issues are not theoretical or speculative. The Taser data from Defendant Salazar's co-defendant, Defendant Greg Esparza, which was successfully retrieved, seriously undercuts Defendant Esparza's credibility. Prior to receipt of the data, Defendant Esparza provided sworn testimony that he tased Mr. Martinez only two times. (*See* Doc. 107 at 3–4.) Yet the data reveals that Defendant Esparza actually tased Mr. Martinez four times in rapid succession, for a nearly continuous application of 24 seconds. (*See* Doc. 107 at 3–4.) It also shows that Defendant Esparza apparently deployed his Taser on dozens of instances without ever completing a Taser Use Report, or even an Incident Report, contrary to EPD policy. (*See id.*) Thus, the electronic Taser data has proved to be extremely significant evidence bearing on Defendant Esparza's credibility and the excessiveness of force used on Mr. Martinez. Because they breached their duty to preserve evidence, Defendants have deprived Plaintiff of similar objective evidence for use against Defendant Salazar.

### III.     The Court Should Order an Adverse Inference Instruction and Attorney's Fees.

Defendants' breach of their duty to preserve relevant evidence can trigger a range of sanctions depending on the degree of fault and the prejudice to Plaintiff. *See United States ex rel. Koch v. Koch Indus., Inc.*, 197 F.R.D. 463, 483 (N.D. Okla. 1998). Spoliation remedies should be crafted to achieve the following three purposes: to punish wrongdoing, to promote fact-finding accuracy, and to compensate the aggrieved party. *Id.* The Court should select the least onerous sanction that is sufficient to serve these remedial purposes. *Id.*

The most extreme sanction is default judgment. *See Philips*, 773 F. Supp. 2d at 1216. The next most serious sanction is a mandatory adverse inference instruction, i.e., instructing the jury

"that production of the document would have been unfavorable to the party responsible for its destruction." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997); *see also EEOC v. Dillon Cos., Inc.*, 839 F. Supp. 2d 1141, 1145 (D. Colo. 2011). The next most serious sanction is a permissive adverse inference instruction. *See Swofford*, 617 F. Supp. 2d at 1284–85; *see also McCargo*, 2011 WL 1638992, at *11 (imposing mandatory instruction for some missing evidence, and permissive instruction for other missing evidence). Mandatory and permissive adverse inference instructions require a finding of bad faith, because merely negligent behavior "does not support an inference of consciousness of a weak case."[3] *Aramburu*, 112 F.3d at 1407. The least serious jury-instruction sanction simply instructs the jury regarding the preservation breach, and informs the jury that it may make whatever inference it deems appropriate. *Browder v. City of Albuquerque*, No. 13-CV-0599 RB-KBM, Doc. 217, *17–18 (D.N.M., Apr. 15, 2016). That instruction may be imposed upon a finding of gross negligence. *Id* at *17. Sanctions other than adverse jury instructions include monetary penalties and/or the exclusion of evidence that cannot adequately be rebutted due to the loss of evidence. *See, e.g., 103 Investors I, LP*, 470 F.3d at 988–89 (affirming spoliation sanction of striking expert testimony even in the absence of bad faith); *Asher Assocs., LLC v. Baker Hughes Oilfield Operations, Inc.*, 2009 WL 1328483, at *11–12 (D. Colo. May 12, 2009) (restricting testimony at trial and awarding costs of additional discovery as sanctions for negligent destruction of evidence).

---

[3] Mandatory adverse inference instructions are generally reserved for cases of extreme prejudice resulting from the spoliation, such as the complete inability to prove a claim or defense, or egregious bad faith. *See, e.g., Flagg v. City of Detroit*, 715 F.3d 165, 177-78 (6th Cir. 2013); *Battery Mfg. Co. v. Club Car, Inc.*, --- F. Supp. 3d ---, 2016 WL 2625010, at **12-13 (N.D. Ohio, May 9, 2016); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1060-61 (S.D. Cal. 2015).

### A. The Court Should Impose a Permissive Adverse Inference Instruction.

In *Swofford*, after finding that the defendants demonstrated bad faith in knowingly disregarding preservation demands, the court ordered that it would instruct the jury that "it may infer" that the lost electronic data "contained information detrimental" to the relevant defendants' cases. 617 F. Supp. 2d at 1284–85. The court ordered such an instruction because of the defendants' "blatant disregard of their obligation to preserve electronic information" and their lack of candor in explaining the reasons for their failures. *Id.* at 1285.

The Court should impose a similar instruction in this case. Defendants' disregard of their duty to preserve evidence was every bit as, if not more than, egregious as the failures in *Swofford.* Further, Defendants, through counsel, initially attempted to explain away their failure to preserve the relevant evidence by blaming a rogue employee who did not even work for the City during the relevant time period. (Doc. 115 at 2.) The Court should instruct the jury that Defendants knowingly breached their obligation to preserve evidence of the incident. The instruction should inform the jury that they may infer that the missing evidence would contradict Defendant Salazar's testimony about the number of times he used his Taser during the incident, and the number of times he used his Taser on other occasions.

Only such an instruction can remediate the prejudice Defendants' misconduct has caused Plaintiff. Lesser sanctions, including the exclusion of evidence or expert reports, would not be sufficient in this case to fully achieve the purposes of punishing wrongdoing, promoting fact-finding accuracy, and compensating the harmed parties.[4] There is no expert affidavit in this case

---

[4]  In the event the Court does not find bad faith, but instead finds gross negligence, it should order a jury instruction similar to the instruction ordered in *Browder*, No. 13-CV-0599 RB-KBM, Doc. 217, *16. In that case, the court sanctioned the Albuquerque Police Department for failing to instruct a warehouse manager to preserve a department-issued cell phone. *Id*. The court

that is unrebuttable as a result of the data loss. And while another possible sanction might be to restrict Defendant Salazar's trial testimony (e.g., to prevent him from testifying that he only used the Taser on Mr. Martinez a certain number of times), that approach would likely prove unworkable at trial.

### B. The Court Should Order an Award of Expenses, Including Fees and Costs.

Finally, in addition to an adverse jury instruction, Defendants should bear Plaintiff's outstanding expenses related to Plaintiff's efforts to discover Defendant Salazar's Taser data. The Court previously awarded Plaintiff reasonable expenses regarding her original motion to compel. (Doc. 146 at 3.) It should now award Plaintiff her reasonable expenses related to the motion to take a 30(b)(6) deposition, (Doc. 172), including her reasonable expenses related to preparing for and appearing at the May 5, 2016 hearing on that motion. Although Defendants belatedly consented to the deposition at the hearing, Defendants forced Plaintiff and the Court to devote their resources in preparing for that hearing. Defendants should also bear the reasonable expenses related to the 30(b)(6) deposition itself, as well as the reasonable expenses related to the instant motion. Such expenses are routinely awarded when courts find that parties have breached their preservation obligations. *See, e.g., Swofford*, 671 F. Supp. 2d at 1281; *Browder*, No. 13-CV-0599 RB-KBM, Doc. 217, *18; *Philips*, 773 F. Supp. 2d at 1216.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court impose spoliation sanctions on Defendants City of Espanola, Espanola Department of Public Safety, and Joseph Salazar, including an adverse inference instruction and an award of expenses.

---

found the police grossly negligent, and ordered that it would give an instruction "that allows the jury to make any inference they believe appropriate in light of the spoliation." *Id.* *17.

        Respectfully submitted,

        COBERLY & MARTINEZ, LLLP

        */s/ Todd A. Coberly*
        Todd A. Coberly
        A. Nathaniel Chakeres
        1322 Paseo de Peralta
        Santa Fe, NM 87501
        (505) 989-1029

## CERTIFICATE OF SERVICE

    I hereby certify that on this 30th day of June, 2016, I filed the foregoing *Plaintiff's Motion for Sanctions for Defendants' Failure to Preserve Taser Data* using the CM/ECF system, which will electronically send notification of such filing to all counsel of record.

        */s/ Todd A. Coberly*
        Todd A. Coberly

11