IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JACKIE MARTINEZ, as Personal
Representative on behalf of the
Estate of Russell Martinez,

      Plaintiff,

vs.                                                                                    Civ. No. 14-534 KG/WPL

JOSEPH SALAZAR, in his individual
capacity, GREG ESPARZA, in his
individual capacity, THE ESPANOLA
DEPARTMENT OF PUBLIC SAFETY,
LEO MONTOYA, and THE CITY OF
ESPANOLA,

      Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Joseph Salazar, Greg Esparza, the

Espanola Department of Public Safety, Leo Montoya, and the City of Espanola's

("Defendants'") Motion to Dismiss for Failure to State a Claim and Memorandum of Law in

Support ("Motion to Dismiss"), filed on July 14, 2015.  (Doc. 93).  Plaintiff filed a response on

July 31, 2015, and Defendants filed a reply on August 14, 2015.  (Docs. 96 and 97).  Having

reviewed the Motion to Dismiss and the accompanying briefs, the Court GRANTS IN PART and

DENIES IN PART the Motion to Dismiss.

I.       **Background**

This is a police excessive force case arising from interactions between Russell Martinez

("Mr. Martinez") and Defendants Joseph Salazar and Greg Esparza on May 11, 2012.  Mr.

Martinez originally filed this case on May 5, 2014, in the First Judicial District Court, County of

Rio Arriba, New Mexico.  (Doc. 1-1).  Defendants later removed the case to this Court on June

6, 2014.  (Doc. 1).  Subsequently, Mr. Martinez filed his First Amended Complaint for Damages

Resulting from Civil Rights Violations, Intentional Torts, Negligence, and Violations of Title II

of the Americans with Disabilities Act ("Amended Complaint").[1]  (Doc. 88).

      In the Amended Complaint, Plaintiff alleges that Mr. Martinez is paraplegic, has had his

lower left leg amputated, and has no feeling in his lower body.  *Id*. at 3:10.  On May 11, 2012,

Mr. Martinez and his wife, Mrs. Jackie Martinez, had an argument in their car in a parking lot.

*Id*. at 3:11–12.  During the argument, bystanders called the police, and Espanola Police

Department Officer Joseph Salazar ("Defendant Salazar") arrived at the scene.  *Id*. at 3:12–13.

Mrs. Martinez spoke to Defendant Salazar and told him that Mr. Martinez was paraplegic,

immobile, and unable to drive.  *Id*. at 3:14.  Mr. Martinez remained in the car.  *Id*. at 3:13.  While

investigating the incident, Defendant Salazar approached the car and asked Mr. Martinez to exit

the vehicle.  *Id*. at 3:16.  Mr. Martinez responded that he is immobile.  *Id*.  Defendant Salazar

then pulled Mr. Martinez from his car, beat him, and drive stunned him with a taser, despite the

fact that he could not move his lower body.  *Id*. at 4:17–18.  During the encounter, Officer Greg

Esparza ("Defendant Esparza") arrived on the scene and shot Mr. Martinez in the chest with a

taser.  *Id*. at 4:21.  As a result, Mr. Martinez suffered excruciating pain and injuries, and was

transported to Espanola Hospital.  *Id*. at 4:22–23.  Although Defendant Salazar claimed in a

police report that Mr. Martinez had committed the offense of Battery Upon a Peace Officer,

neither Defendant Salazar nor Defendant Esparza ever brought charges against Mr. Martinez.  *Id*.

at 4:24.

---

[1] On December 7, 2015, Plaintiff's Counsel filed a statement notifying the Court and the parties
that Mr. Martinez had passed away.  (Doc. 139).  The Court then substituted Jackie Martinez, as
personal representative of Mr. Martinez's estate, as the plaintiff in this case.  (Doc. 161).

Based on these allegations, the Amended Complaint alleges four counts.  In Count I, Plaintiff brings 42 U.S.C. § 1983 excessive force claims against Defendants Salazar and Esparza. (Doc. 88) at 5.  In Count II, Plaintiff brings New Mexico Tort Claims Act ("NMTCA") claims against Salazar and Esparza for the intentional torts of assault, battery, false arrest, and violation of the United States and New Mexico constitutions.  *Id.* at 5–6.  In addition, the Amended Complaint alleges *respondeat superior* claims against the Espanola Department of Public Safety ("EDPS") and the City of Espanola for the intentional torts allegedly committed by Salazar and Esparza.  *Id.*  In Count III, Plaintiff brings state negligence claims against Joe Montoya, the Director of the EDPS, for negligently hiring, training, and/or supervising Salazar and Esparza, and thereby causing Salazar and Esparza to commit the intentional torts listed in Count II.  *Id.* at 6–7.  The Amended Complaint also alleges that EDPS and the City of Espanola are liable for Montoya's negligent actions under *respondeat superior*.  *Id.* at 7.  Finally, in Count IV, Plaintiff asserts claims under Title II of the Americans with Disabilities Act ("ADA") against the EDPS and the City of Espanola for failing to reasonably accommodate Mr. Martinez's disability in the course of questioning, interacting with, and detaining him.  *Id.*

Defendants now move to partially dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 93).  As grounds for dismissal, Defendants first argue that Plaintiff's claims pursuant to the ADA under a "wrongful arrest" theory must be dismissed, since Plaintiff does not adequately allege that Defendants wrongfully arrested Mr. Martinez because they misperceived the effects of his disability as criminal activity.  (Doc. 93) at 4–6.  Second, Defendants contend that, to the extent Plaintiff asserts Section 1983 claims for Defendants' failure to accommodate Mr. Martinez's disability, Defendants are entitled to qualified immunity on that claim, because that right was not clearly

established at the time of the encounter. *Id*. at 6–9.  Plaintiff opposes the Motion to Dismiss in

its entirety.  (Doc. 96).  In the event the Court finds Plaintiff's allegations insufficient to state a

claim, Plaintiff asks that she be granted leave to amend the Amended Complaint. *Id*. at 8–9.

## II.        Standard of Review

In reviewing a Rule 12(b)(6) motion asserting a failure to state a claim upon which relief

can be granted, the Court must accept all well-pleaded allegations as true and must view them in

a light most favorable to the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118 (1990).  Rule

12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief

through more than labels, conclusions and formulaic recitation of the elements of a cause of

action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a 12(b)(6) motion

to dismiss, a complaint does not need to include detailed factual allegations, but "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Id.*  In other

words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the

plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.*

at 570.  Dismissal with prejudice is appropriate where a complaint fails to state a claim under

Rule 12(b)(6) and granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*,

434 F.3d 1213, 1219 (10th Cir. 2006).

## III.       Discussion

Defendants move to partially dismiss two of the four counts alleged in the Amended

Complaint for failure to state a claim.  The Court will address each in turn.

### A. <u>*Plaintiff's Claims under the ADA*</u>

Defendants first argue that this Court should partially dismiss Plaintiff's claims under the

ADA in Count IV of the Amended Complaint.  Under the ADA, two cognizable theories of

liability exist: (1) "wrongful arrest;" and (2) "failure to accommodate" a disability.  Defendants

do not challenge Plaintiff's claims under the "failure to accommodate" theory.  Rather,

Defendants argue that the Amended Complaint fails to state a claim under the "wrongful arrest"

theory because Plaintiff does not allege that Defendants wrongfully arrested Mr. Martinez

because they misperceived the effects of his disability as criminal activity.  In response, Plaintiff

argues that, under the facts alleged in the Amended Complaint, it is plausible that Defendant

Salazar misperceived Mr. Martinez's inability to follow orders, as a result of his paraplegia, as

unlawful conduct, which led to the assault and detention of Mr. Martinez.  Thus, Plaintiff

contends that she has plausibly alleged a "wrongful arrest" claim under the ADA.

### 1.  *ADA Claims Based on Police Conduct During an Arrest or Investigation*

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of such services,

programs or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  In the Tenth Circuit, a plaintiff must prove three factors to establish a claim

under Title II: (1) that he or she is a qualified individual with a disability; (ii) that he or she was

either excluded from participation in or denied the benefits of some public entity's services,

programs, or activities, or the public entity otherwise discriminated against the plaintiff; and (iii)

that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's

disability.  *Trujillo v. Rio Arriba Cty.*, No. CIV 15-0901 JB/WPL, 2016 WL 4035340, at *8

(D.N.M. June 15, 2016) (citing *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)).

The Tenth Circuit has held that a plaintiff may state a claim under Title II of the ADA

based on police conduct in an arrest or investigation.  *Twitchell v. Hutton*, No. 10-CV-01939-

WYD-KMT, 2011 WL 318827, at *10 (D. Colo. Jan. 28, 2011) (citing *Gohier*, 186 F.3d at

1220–21).  In *Gohier v. Enright*, the Tenth Circuit discussed Title II claims arising from arrests

under two different theories.  186 F.3d  at 1220.  First the Court discussed claims in which the

police wrongly arrested an individual with a disability because the police misperceived the

effects of that disability as criminal activity.  *Id.* (citing *Lewis v. Truitt*, 960 F. Supp. 175, 176–77

(S.D. Ind. 1997); *Jackson v. Town of Sanford*, No. 94–12–P–H, 1994 WL 589617, at *1 (D. Me.

Sept. 23, 1994)).  Second, the Court stated that a plaintiff may also recover where police properly

investigated and arrested a person with a disability for a crime unrelated to that disability, but

failed to accommodate the person's disability in the course of investigation or arrest, causing the

person to suffer greater injury or indignity in that process than other arrestees.  *Id.* at 1220–21

(citing *Gorman v. Bartch,* 152 F.3d 907, 912–13 (8th Cir. 1998)).  While the *Gohier* Court did

not formally adopt either or both the "wrongful arrest" theory and the "reasonable

accommodation" theory, it held that "a broad rule categorically excluding arrests from the scope

of Title II . . . is not the law."  *Id.* at 1221.

The parties do not dispute whether the "wrongful arrest" and "reasonable

accommodation" theories are viable in this Circuit.  Instead, Defendants contend that Plaintiff

has failed to plausibly state a claim under the "wrongful arrest" theory of liability.

> 2.  *Whether Plaintiff Plausibly Asserts a Claim under the ADA's "Wrongful*
> *Arrest" Theory*

Courts have held that "[t]he essence of [the wrongful arrest] theory is that the police

mistake legal conduct caused by the disability as illegal conduct."  *Trujillo*, 2016 WL 4035340,

at *9 (citing *Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 428–29 (D. Del. 2013)).  This

requires the plaintiff to show that: (1) the plaintiff was disabled; (2) the arresting officer knew or

should have known that the plaintiff was disabled; and (3) the defendant arrested the plaintiff

because of legal conduct related to the plaintiff's disability. *Id.* (internal citations omitted); *See e.g. Lewis*, 960 F. Supp. at 178; *Everson v. Leis*, 412 F. App'x 771, 780 (6th Cir. 2011).

Here, based on the facts alleged in the Amended Complaint, the Court agrees with Plaintiff that it is plausible that Defendant Salazar misperceived Mr. Martinez's inability to exit the vehicle—resulting from his disability—as unlawful conduct, which ultimately led to Mr. Martinez's assault and detention. Indeed, the Amended Complaint asserts that Defendant Salazar represented in a police report that Mr. Martinez committed the offense of Battery Upon a Police Officer.

However, in order to state a claim under the ADA pursuant to the "wrongful arrest" theory, courts have required that a plaintiff actually be arrested. While the law surrounding liability for police conduct under the ADA is not thoroughly developed, particularly in the Tenth Circuit, every court discussing the "wrongful arrest" theory of liability has articulated the plaintiff's arrest as an element. *See e.g. Trujillo*, 2016 WL 4035340, at *9; *Lewis*, 960 F. Supp. at 178; *Everson*, 412 F. App'x at 780. Because the Amended Complaint states that "neither Defendant Salazar nor Defendant Esparza ever brought charges against [Mr. Martinez], the Court finds that it has not stated a claim for relief under the ADA pursuant to the  "wrongful arrest" theory. Accordingly, that claim should be dismissed with prejudice.

Plaintiff asks this Court to refrain from dismissing any claims under the "wrongful arrest" theory, and to allow Plaintiff to engage in discovery in order to fully investigate the facts. However, at this stage of the proceedings, discovery has concluded and Plaintiff has neither amended nor supplemented her response to the Motion to Dismiss. Moreover, "[u]nlike a motion for summary judgment, a motion to dismiss tests the legal sufficiency of a complaint and requires no additional discovery." *Morrow v. The State of New Mexico, et al.*, Civ. No. 15-

00026 WJ/WPL, Order Staying Discovery (Doc. 37) at 2 (D.N.M. June 15, 2015) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 774–75 (2009)).

In lieu of dismissal, Plaintiff also requests leave to amend the Amended Complaint.

Plaintiff's request for leave to amend is not well-taken.  Again, discovery has concluded and

Plaintiff has not supplemented her response or formally requested leave to amend the Amended

Complaint.  Moreover, granting leave to amend the ADA claim would be futile because the facts

as alleged in the Amended Complaint fail to state a claim under the "wrongful arrest" theory as a

matter of law.  *See Brereton*, 434 F.3d at1219.  Thus, to the extent Plaintiff is asserting a

"wrongful arrest" claim in Count IV of the Amended Complaint, that claim is dismissed with

prejudice.  Plaintiff's claim in Count IV under the "reasonable accommodation" theory remains.

### B.   *Plaintiff's Claims under Section 1983*

Second, Defendants argue that Plaintiff's excessive force claims under Section

1983 should be partially dismissed.  Specifically, Defendants argue that, to the extent Plaintiff

alleges that Defendants Salazar and Esparza violated Mr. Martinez's constitutional rights by

failing to accommodate his disability, that claim should be dismissed.  As grounds, Defendants

contend that Defendants Salazar and Esparza are entitled to qualified immunity because, at the

time of the incident, it was not clearly established that they could violate Mr. Martinez's

constitutional rights by failing to accommodate his disability.  Plaintiff responds that the facts as

alleged in the Amended Complaint plausibly state a claim for excessive force, and that the claim

does not depend on Mr. Martinez's disability.

### 1.   *The Fourth Amendment's Protection Against Excessive Force*

The issue in Fourth Amendment excessive force cases is whether, under the totality of the

circumstances, an officer's use of force was objectively reasonable.  *Graham v. Connor*, 490

U.S. 386, 397 (1989).  This test involves viewing the reasonableness of an officer's use of force

from an "on-scene" perspective.  *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part on*

*other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  Factors to consider in determining

if use of force was excessive include "the severity of the crime at issue, whether the suspect

poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight."  *Id.* (quoting *Graham*, 490 U.S. at 396).

### 2.  *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Where a defendant raises the defense of qualified immunity in a motion to dismiss, the court

must determine whether the plaintiff has sufficiently alleged that: (1) the defendant's actions

violated her constitutional or statutory rights; and (2) whether that right was clearly established at

the time of the alleged misconduct.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

"If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the

defendant qualified immunity."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing

*Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).  Thus, a court may consider either

prong of the qualified immunity analysis.  *See Pearson*, 555 U.S. at 236.

### 3.  *Whether Defendants are Entitled to Qualified Immunity on Plaintiff's Section 1983 Claim for Excessive Force*

Defendants argue that, at the time of the encounter, it was not clearly established that

Defendants Salazar and Esparza violated Plaintiff's rights under the Fourth Amendment for

failing to accommodate Mr. Martinez's disability.  In support, Defendants cite to *City & Cty. of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015) and *J.H. ex rel. J.P. v. Bernalillo Cty.*, No. CIV. 12-0128 JB/LAM, 2014 WL 3421037 (D.N.M. July 8, 2014).  Defendants argue it was not clearly established that a police officer could violate a plaintiff's Fourth Amendment right by failing to accommodate his disability and, therefore, that they are entitled to qualified immunity. Defendants' reliance on *Sheehan* and *J.H.* is misplaced, however, and their argument is unavailing.

As an initial matter, Plaintiff does not allege that Defendants Salazar and Esparza violated Mr. Martinez's right to be free from excessive force on the basis that they failed to accommodate his disability.  (Doc. 88) at 5:25–30.  Indeed, Plaintiff responds that her excessive force claim does not depend on Mr. Martinez's disability, although it informs the question of whether Defendants Salazar and Esparza acted reasonably.  (Doc. 96) at 7.  As a result, the Court sees no reason to dismiss any portion of Plaintiff's Section 1983 claim.

Moreover, *Sheehan* and *J.H.* do not require a different result.  Each case is highly fact-specific, and focuses on facts which are not present here.  In *Sheehan*, for example, police officers were faced with a situation in which an armed, mentally ill suspect who had been acting irrationally had locked herself in a room, and threatened anyone who entered the room.  135 S.Ct. at 1776–77.  There, the Court focused on whether it was clearly established that, given all these facts, there was no objective need for an immediate entry into the plaintiff's room, and that the officers should have accommodated the plaintiff's mental disability instead.  *Id*. at 1777.  The Court held that no precedent clearly established that there was no objective need for immediate entry.  *Id*.  As a result, the Court held that the officers were entitled to qualified immunity.  *Id*. at 1777–78.

10

In *J.H.*, the plaintiff alleged that a defendant police officer had violated a disabled child's constitutional right to be free from excessive force by handcuffing and arresting the child in connection with a physical altercation between her, a classmate, and her teacher during the school day. 2014 WL 3421037, at *18.  There, the child qualified as emotionally disturbed, and often reacted to everyday situations with anger and aggression.  *Id.* at *2–3.  Plaintiff's argument largely rested on the assumption that, given the child's emotional disturbance, she could not form the criminal intent required of the crimes she was charged with: battery on school personnel, battery, interference with educational process, and disorderly conduct.  *Id.* at *14, *85–87.  However, the Honorable James O. Browning rejected this argument.  Specifically, Judge Browning held that it was not clearly established that a police officer uses excessive force when he handcuffs and arrests a child—even a mentally disabled child—where the officer has probable cause to believe the child committed a violent offense and has recently violently attacked a fellow student and teacher.  *Id.* at *92.  As a result, the police officer was entitled to qualified immunity.  *Id.*

Both of these cases pose the general question as to whether the defendants, who were otherwise justified in their use of force, should not have taken certain actions before accommodating the plaintiff's mental disability.  Indeed, but for both plaintiffs' mental disabilities in *Sheehan* and *J.H.*, there was no doubt that the officers acted without violating the plaintiffs' constitutional rights.  135 S.Ct. at 1775; 2014 WL 3421037, at *87.

The question posed here by the Amended Complaint is whether Defendants used constitutionally justifiable force in detaining Mr. Martinez, who was not able to fight back and did not pose a significant threat.  This was, in part, based on the facts that his left lower leg was amputated and he could not move his lower body.  Whereas in *Sheehan* and *J.H.* the plaintiffs

argued that the defendants were otherwise justified in using force, but were obligated to accommodate the plaintiffs' mental disabilities, here Plaintiff challenges Defendant Salazar and Esparza's use of force in the first place. This is not situation where Mr. Martinez is alleged to have been physically violent and aggressive, and that, had Mr. Martinez not suffered from a mental disability, Defendants Salazar and Esparza could have justifiably used the force described in the Amended Complaint. Rather, Plaintiff asserts that Mr. Martinez presented no physical threat to the officers. Consequently, Plaintiff maintains that Defendant Salazar and Esparza's use of force in light of these specific circumstances, regardless of whether they resulted from Mr. Martinez's disability, was objectively unreasonable.

In sum, Plaintiff's Section 1983 claim does not hinge on whether Defendants Salazar and Esparza failed to accommodate Mr. Martinez's disability. Additionally, Defendants do not assert the defense of qualified immunity as to Plaintiff's general claim that Defendants Salazar and Esparza used excessive force in detaining Mr. Martinez. Accordingly, the Court finds no basis to partially dismiss Plaintiff's excessive force claims.

**IV.   Conclusion**

In light of the foregoing, IT IS THEREFORE ORDERED that:

(1) Defendants' Motion to Dismiss for Failure to State a Claim and Memorandum of Law in Support, (Doc. 93), is GRANTED IN PART and DENIED IN PART;

(2) Plaintiff's claim under Title II of the ADA brought under a theory of "wrongful arrest" is DISMISSED WITH PREJUDICE; and

(3) All remaining claims under both the ADA and Section 1983 remain.

UNITED STATES DISTRICT JUDGE

12