IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JACKIE MARTINEZ, as Personal
Representative on behalf of the
Estate of Russell Martinez,

       Plaintiff,

vs.                                                Civ. No. 14-534 KG/WPL

JOSEPH SALAZAR, in his individual
capacity, GREG ESPARZA, in his
individual capacity, THE ESPANOLA
DEPARTMENT OF PUBLIC SAFETY,
LEO MONTOYA, and THE CITY OF
ESPANOLA,

       Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon motions in limine filed by both parties.  On

September 16, 2015, Plaintiff filed Plaintiff's Motion in Limine to Exclude the Expert Testimony

of Raymond J. Rael and Memorandum in Support ("Plaintiff's Motion in Limine").  (Doc. 103).

Defendants filed a response on October 7, 2015, and Plaintiff filed a reply on October 26, 2015.

(Docs. 108 & 116).  On October 13, 2015, Defendants filed Defendants' First Motion in Limine

to Exclude the Opinion Testimony of Plaintiff's Expert Roger A. Clark ("Defendants' First

Motion in Limine") and Defendants' Second Motion in Limine to Exclude the Opinion

Testimony of Plaintiff's Expert Roger A. Clark ("Defendants' Second Motion in Limine").

(Docs. 110 & 111).  Plaintiff filed a consolidated response to both motions, and Defendants filed

replies.  (Docs. 119, 128, & 129).  Having reviewed the motions, the accompanying briefs,

relevant law, and otherwise being fully advised, the Court GRANTS Plaintiff's Motion in

Limine, GRANTS IN PART and DENIES IN PART Defendants' First Motion in Limine, and GRANTS IN PART and DENIES IN PART Defendants' Second Motion in Limine.

**I.      Background**

This is a police excessive force case arising from interactions between Russell Martinez ("Mr. Martinez") and Defendants Joseph Salazar and Greg Esparza.  Mr. Martinez originally filed this case on May 5, 2014, in the First Judicial District Court, County of Rio Arriba, New Mexico.  (Doc. 1-1).  Defendants removed the case to this Court on June 6, 2014.  (Doc. 1). Subsequently, Mr. Martinez filed his First Amended Complaint for Damages Resulting from Civil Rights Violations, Intentional Torts, Negligence, and Violations of Title II of the Americans with Disabilities Act ("Amended Complaint").[1]  (Doc. 88).

In the Amended Complaint, Plaintiff alleges that Mr. Martinez is paraplegic, has had his lower left leg amputated, and has no feeling in his lower body.  *Id*. at 3:10.  On May 11, 2012, Mr. Martinez and his wife, Mrs. Jackie Martinez, had an argument in their car in a parking lot. *Id*. at 3:11–12.  During the argument, bystanders called the police, and Espanola Police Department Officer Joseph Salazar ("Defendant Salazar") arrived at the scene.  *Id*. at 3:12–13. Mrs. Martinez spoke to Defendant Salazar and told him that Mr. Martinez was paraplegic, immobile, and unable to drive.  *Id*. at 3:14.  Mr. Martinez remained in the car.  *Id*. at 3:13.  While investigating the incident, Defendant Salazar approached the car and asked Mr. Martinez to exit the vehicle.  *Id*. at 3:16.  Mr. Martinez responded that he is immobile.  *Id*.  Defendant Salazar then pulled Mr. Martinez from his car, beat him, and drive stunned him with a Taser, despite the fact that he could not move his lower body.  *Id*. at 4:17–18.  During theis encounter, Officer Greg

---

[1] On December 7, 2015, Plaintiff's Counsel filed a statement notifying the Court and the parties that Mr. Martinez had passed away.  (Doc. 139).  The Court then substituted Jackie Martinez, as personal representative of Mr. Martinez's estate, as the plaintiff in this case.  (Doc. 161).

Esparza ("Defendant Esparza") arrived on the scene and shot Mr. Martinez in the chest with a Taser. *Id*. at 4:21. As a result, Mr. Martinez suffered excruciating pain and injuries, and was transported to Espanola Hospital. *Id*. at 4:22–23.

Based on these allegations, the Amended Complaint alleges four counts. In Count I, Plaintiff brings 42 U.S.C. § 1983 excessive force claims against Defendants Salazar and Esparza. (Doc. 88) at 5. In Count II, Plaintiff brings New Mexico Tort Claims Act ("NMTCA") claims against Salazar and Esparza for the intentional torts of assault, battery, false arrest, and violation of the United States and New Mexico constitutions. *Id*. at 5–6. In addition, the Amended Complaint alleges *respondeat superior* claims against the Espanola Department of Public Safety ("EDPS") and the City of Espanola for the intentional torts allegedly committed by Salazar and Esparza. *Id.* In Count III, Plaintiff brings state negligence claims against Joe Montoya, the Director of the EDPS, for negligently hiring, training, and/or supervising Salazar and Esparza, and thereby causing Salazar and Esparza to commit the intentional torts listed in Count II. *Id.* at 6–7. The Amended Complaint also alleges that EDPS and the City of Espanola are liable for Montoya's negligent actions under *respondeat superior*. *Id.* at 7. Finally, in Count IV, Plaintiff asserts claims under Title II of the Americans with Disabilities Act ("ADA") against the EDPS and the City of Espanola for failing to reasonably accommodate Mr. Martinez's disability in the course of questioning, interacting with, and detaining him. *Id.* The parties largely dispute the facts of this case.

Each party has retained experts to evaluate Defendants Salazar and Esparza's use of force and alleged ADA violations. *See* (Docs. 103-1 & 110-1). Both Plaintiff and Defendants now move to exclude the opposing party's expert testimony pursuant to Federal Rules of Evidence

403 and 702, on the grounds that the testimony is not reliable or helpful for various reasons, and may be prejudicial to the parties or confusing to the jury.

## II.      Standard of Review

Under Federal Rule of Evidence 702, "[a] district court may allow expert testimony '[i]f [the expert's] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) (citing FED. R. EVID. 702); *see United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) ("The touchstone of admissibility under rule 702 is the helpfulness of the evidence to the trier of fact.") (citing *United States v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993)). The Court must act as a gatekeeper under Rule 702 to ensure the reliability and relevance of all proffered expert testimony. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Indeed, "[t]he [United States] Supreme Court has held that Rule 702 imposes a special obligation upon a trial judge to ensure that all expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable." *Adams*, 271 F.3d at 1245 (internal citations omitted).

In addition, any "proffered expert testimony must also pass muster under Federal Rule of Evidence 403." *Schinagel et al. v. City of Albuquerque, et al.*, No. Civ. 07-481 LH/RLP, at *4 (D.N.M. Mar. 25, 2009) (unpublished).  Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

### III.     Discussion

Both parties ask this Court to exclude the opposing party's expert testimony on several

grounds.  The Court will address each expert report and the relevant objections in turn.

> *A.   Plaintiff's Motion in Limine to Exclude the Report and Testimony of Defendants'*
> *Expert Raymond J. Rael*

Defendants retained Raymond J. Rael to conduct an evaluation of the propriety of the use

of force by Defendants Salazar and Esparza during the encounter with Mr. Martinez.  (Doc. 103-

1) at 1.  Mr. Rael's report indicates that he seeks to testify that Defendants Salazar and Esparza

did not use excessive force while interacting with Mr. Martinez, and that the officers did not

necessarily violate the ADA.  *Id*. at 10–12.  In the Motion in Limine, Plaintiff moves to exclude

Mr. Rael's testimony completely, on the grounds that Mr. Rael's conclusions are improperly

predicated on his credibility determination that Defendants' account of what happened is more

likely to have occurred.  Defendants respond that Mr. Rael's report properly renders opinions on

the ultimate issues in this case and makes no credibility determinations.

"[The Tenth Circuit] ha[s] said that '[t]he credibility of witnesses is generally not an

appropriate subject for expert testimony.'"  *Adams*, 271 F.3d at 1245 (citing *United States v.*

*Toledo,* 985 F.2d 1462, 1470 (10th Cir. 1993)).  This is because "[s]uch testimony: (1) usurps a

critical function of the jury; (2) is not helpful to the jury, which can make its own determination

of credibility; and (3) when provided by impressively qualified experts on the credibility of other

witnesses is prejudicial and unduly influences the jury."  *Hill*, 749 F.3d at 1258 (internal citations

and quotations omitted).

Upon review of Mr. Rael's report, it is evident that he has formulated his analysis and

conclusions by making credibility determinations of the witnesses.  Indeed, Mr. Rael explicitly

states that, "[i]n light of conflicting reports and the lack of independent witnesses, the evaluation

of this case is by necessity conducted based on the most likely and reasonable scenario." (Doc. 103-1) at 9.  He then goes on to opine that Defendant "Salazar's version of events appears more logical, and suggests that he acted reasonably in arresting Martinez after being punched, and justified in using reasonable force, up to and including intermediate weapons such as a baton or Taser, to prevent Mr. Martinez from accessing his firearm and forcing compliance for restraint and custody." *Id*. at 10.  Mr. Rael continues to base his conclusions on Mr. Martinez's purported aggressive and violent resistance, his attempts to acquire Defendant Salazar's firearm, and the fact that Defendant Salazar may not have known that Mr. Martinez was disabled.  *Id*. at 11, 12.

However, the facts surrounding the physical interaction between Mr. Martinez and defendants are highly disputed.  For instance, Plaintiff disputes whether Mr. Martinez or Defendant Salazar was the initial aggressor in their interaction, and whether Mrs. Martinez explicitly told Defendant Salazar that Mr. Martinez was paraplegic and could not move from the waist down.  As a result, while Mr. Rael utilizes his experience and methodology to come to his conclusions, he bases those conclusions on his assumption that the facts are as Defendants suggest, and not as Plaintiff alleges.

Because Mr. Rael's report and testimony relies completely on this credibility determination, the Court finds that the testimony would not be helpful to the jury, and should be excluded.  *See Schinagel*, No Civ. 07-481 LH/RLP, at *5–6 (holding that expert testimony which relied on defendant's version of facts, and discounted plaintiff's, merely vouched for credibility of witness and encroached on jury's exclusive function and does not assist trier of fact).  The Court notes that, to the extent Mr. Rael's conclusions did not rely on his credibility determination, those opinions could have been admitted.  But it is clear, based on the Court's review of his report, that Mr. Rael's entire analysis and corresponding opinions rely are based on

his credibility determinations, and this Court is limited to considering his report and proposed testimony. *Id.*; *See* Fed. R. Civ. P. 26(a)(2)(B). For these reasons, Plaintiff's Motion in Limine to exclude Mr. Rael's testimony will be GRANTED.

   B.   *Defendants' Motions in Limine to Exclude the Testimony of Plaintiff's Expert Roger A. Clark*

Plaintiff retained Roger A. Clark to conduct an evaluation and render his opinion on Defendants Salazar and Esparza's use of force and tasing of Mr. Martinez. (Doc. 110-1) at 1. Mr. Clark seeks to testify that Defendants Salazar and Esparza used excessive force while interacting with Mr. Martinez, and that there appears to be inadequate policies and procedures within the EDPS regarding the use of force and accommodating individuals with disabilities. *Id.* at 10–12. In their First and Second Motions in Limine, Defendants move to exclude Mr. Clark's testimony on several grounds. Plaintiff opposes both motions in their entirety.

   1.   *Defendants' First Motion in Limine*

In their First Motion in Limine, Defendants move to exclude Mr. Clark's testimony with regard to Plaintiff's excessive force claims on the grounds that he makes factual and credibility determinations, draws legal conclusions, discusses police operating procedures and national police practices, and focuses on "less intrusive" alternatives to the use of force in this case. In response, Plaintiff maintains that Mr. Clark does not vouch for any witness's credibility or come to any impermissible legal conclusions, and should be able to testify about national and local policing standards and de-escalation tactics.

   a.   *Mr. Clark's Testimony and Witness Credibility*

Similar to Plaintiff, Defendants first argue that Mr. Clark's testimony improperly makes

factual and credibility determinations in Plaintiff's favor, which inform his analysis and conclusions.  Specifically, Defendants maintain that Mr. Clark made factual and credibility determinations in his consideration of Defendants Salazar and Esparza's perception of Mr. Martinez's disability and the parties' accounts of how the incident began, including Mr. Martinez's aggressive behavior.  In response, Plaintiff contends that Mr. Clark does not vouch for any witness's credibility, and indicates where his conclusions assume the truth of one set of facts.

As explained above, "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony."  *Hill*, 749 F.3d at 1258 (citing *Toledo*, 985 F.2d at 1470).  At the same time, "experts are not barred from assuming facts if it is clear that the expert is assuming facts and not confirming the facts being assumed."  *Chambers v. Fike*, No. 13-1410-RDR, 2015 WL 404810, at *7 (D. Kan. Jan. 29, 2015) (citing *Champagne Metals v. Ken–Mac Metals, Inc.,* 458 F.3d 1073, 1080 n.4 (10th Cir. 2006)).

Unlike Defendants' expert, Mr. Rael, Mr. Clark makes no statements as to the reasonableness or likelihood of either party's version of events in his report.  Rather, Mr. Clark acknowledges the parties' different accounts and, at different points throughout the report, assumes the veracity of either Mr. Martinez's or Defendants Salazar and Esparza's story, and renders an opinion based on those events.  Defendants urge that Mr. Clark relies on facts that are in dispute to render an opinion favorable to Plaintiff, including whether Defendants Salazar and Esparza were aware of Mr. Martinez's disability, whether his wheelchair was visible in the trunk of the car, whether Plaintiff was the initial aggressor in the interaction, and the appropriate level of force.

However, several of the excerpts from the report, which Defendants cite as resolving factual disputes, are taken from Mr. Clark's account of either Defendants' or Plaintiff's version of the events underlying this case. Indeed, they fall within sections titled "Defendant Officers Salazar & Esparza's Account of the Events and Commentary" and "Mr. Martinez's and Mrs. Martinez's Account and Commentary." *See* (Doc. 110-1) at 3–6.

Further, in rendering his opinions in the section titled, "Opinions Thus Far," Mr. Clark does not appear to resolve any factual issues. To the contrary, Mr. Clark often relies on undisputed facts in his analysis. For instance, in opining that "Officer Salazar was required to know the obvious factors that would indicate that Mr. Martinez, in this set of facts, could not, and did not, pose a danger that could possibly justify the force [Officer Salazar] inflicted on him[ ]," Mr. Clark states that "Mr. Martinez was a paraplegic, immobile and unarmed." *Id*. at 6–7. Defendants insist that Defendants Salazar and Esparza were not aware of Mr. Martinez's paraplegia during the altercation, and that there is a dispute as to whether Mr. Martinez's wheelchair was visible during the altercation. However, Mr. Clark does not rely on whether Defendants were aware of the paraplegia, or whether the wheelchair was in fact visible, to render his opinion. Instead, Mr. Clark opines that the officers should have realized that Mr. Martinez was not a threat based on the undisputed facts that he was paraplegic and that his lower left leg was amputated. (Doc. 110-1) at 7. Mr. Clark does not cite the presence of the wheelchair at the scene as a dispositive fact underlying his opinion, in neither his report nor his deposition. *Id*. at 6–7; (Doc. 131-2) at 72:1–22, 74:20–25, 75:1–16. Even if he did, that fact appears undisputed. (Doc. 131-3) at 5 (Second Supplemental Answers to Plaintiff's First Set of Interrogatories to Defendant Salazar) ("I first noticed Plaintiff's wheelchair after he was cuffed."). The question of

whether Defendants Salazar and Esparza noticed, or should have noticed, the wheelchair at the beginning of the encounter is an entirely separate question.

In addition, when providing analysis of other issues, Mr. Clark acknowledges that he is accepting one party's facts as true.  Indeed, in finding that Defendants Salazar and Esparza's use of force was not justified, he states that there was nothing to "justify the use of any physical force whatsoever, even assuming Officer Salazar initially thought that Mr. Martinez might have a firearm."  (Doc. 110-1) at 7:2.  Elsewhere, Mr. Clark assumes the facts to be as Plaintiff alleges, stating that "[t]he allegations by Mr. Martinez that he was thrown to the ground, punched and tased, portray[ ] a harrowing narrative of excessive and unnecessary force . . . ."  *Id.* at 7:4.  Mr. Clark clarifies that this was his intention in his deposition.  (Doc. 119-4) at 90:7–25, 91:1– 12.  This is entirely proper under Rule 702.[2] *Chambers*, No. 13-1410-RDR, 2015 WL 404810, at *7.

Defendants further characterize Mr. Clark's report and deposition testimony as expressing his opinion on whether Defendants' allegations themselves are true, possible, or unreasonable.  Specifically, Defendants first assert that "[Mr.] Clark finds it incredulous that it took two (2) police officers and a Good Samaritan to subdue the Plaintiff."  (Doc. 128) at 2.  The Court disagrees with this characterization.  In fact, Mr. Clark opines that, given that two officers and a civilian were working together to subdue Mr. Martinez, it was not reasonable for

---

[2] Defendants also assert that Mr. Clark fails to account for Mr. Martinez's use of drugs during the encounter.  Mr. Clark's report does not take a position on the issue of whether Mr. Martinez was under the influence of any substances, and his deposition clarifies that the use of drugs would not affect the analysis of this case.  (Doc. 131-2) at 113:13–115:18.  Moreover, Mr. Clark did not engage in any factual or credibility determinations on this issue, and the question of whether or not Mr. Martinez was under the influence of any substances can be addressed during trial on cross examination.

Defendant Esparza to use a Taser as a method of gaining compliance or affecting an apprehension.  (Doc. 131-2) at 64:20–24, 66:25, 67:1–8.

Second, Defendants argue that Mr. Clark disagrees with Defendants as to how Mr. Martinez exited his vehicle during the interaction, in particular when he refers to Defendant Salazar "pulling" Mr. Martinez out of the car.  However, in making the observation that Mr. Martinez was pulled out of the car, Mr. Clark states that he relies on Defendant Salazar's own account of what happened.  While Defendant Salazar's testimony to this issue is confusing, it is clear that Mr. Clark bases his opinion of whether Defendants acted reasonably on the facts as a whole according to Defendants, not on the facts as Mr. Clark believes them to be.  (Doc. 128-1) at 62:3–15, 63:23–25, 65:18–25, 66:1–24.  Indeed, Mr. Clark is sure to point out that the likelihood or possibility for the events to have occurred as Defendants allege is up to a jury to decide.  (Doc. 128-1) at 55:15–23.  This is in stark contrast to Defendants' expert, Mr. Rael, who, as explained above, has rendered opinions as to which version of events is more reasonable or logical, and based his entire analysis on that set of facts.[3]

The Court acknowledges that Mr. Clark's testimony should be clear as to the particular set of facts Mr. Clark relies on, and whether he assumes a certain set of facts to render his opinions.  However, the Court finds that these assumptions can easily be clarified at the time of trial and on cross-examination, and that there is no need to exclude Mr. Clark's testimony entirely at this time.  As a result, the Court will not exclude Mr. Clark's testimony on the basis that he makes improper credibility determinations in his report.

---

[3] It should be noted that the disputed facts in this case may be further developed as the Court considers Defendants' pending dispositive motions.  *See* (Docs. 112 & 113).  Depending on those findings, it may be appropriate to reconsider the reliability and helpfulness of Mr. Clark's report. Until that time, however, it would be inappropriate to completely exclude Mr. Clark's report and testimony.

### b. *Mr. Clark's Testimony and Legal Conclusions*

Second, Defendants argue that Mr. Clark's testimony contains numerous legal conclusions regarding Defendants Salazar and Esparza's use of excessive force and violations of training, policy, and law.  Defendants contend expert witnesses are not permitted to testify as to legal conclusions and, as a result, Mr. Clark's testimony should be excluded.

In response, Plaintiff maintains that, generally, Mr. Clark opines that the level of force used against Mr. Martinez was excessive and unnecessary based on his experience and expertise in police practices and standards, which is entirely proper.  Plaintiff does concede, however, that Mr. Clark may not inform the jury directly as to what the law is, or whether Defendants have violated it. Plaintiff states that there are several isolated instances in the report where Mr. Clark states that Defendants Salazar and Esparza acted contrary to law, and provides background information regarding various aspects of the ADA.  Plaintiff assures the Court that she will not elicit testimony at trial about whether Defendants violated the law or different components of the ADA.

Generally, Federal Rule of Evidence 704(a) "allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact." *A.E. By & Through Evans v. Indep. Sch. Dist. No. 25, of Adair Cty., Okl.*, 936 F.2d 472, 476 (10th Cir. 1991) (internal citations omitted).  However, "[t]he [Federal] Rules [of Evidence] do not . . . allow an expert to offer testimony that merely tells the jury what result they should reach or testimony phrased in terms of 'inadequately explored legal criteria.'" *Moriarty v. Bd. of Cty. Comm'rs for Cty. of Sandoval*, 931 F. Supp. 2d 1142, 1162 (D.N.M. 2013) (citing *United States v. Simpson,* 7 F.3d 186, 188 (10th Cir. 1993)).  Indeed, "an expert may not state legal conclusions drawn by applying the law to facts." *A.E.*, 936 F.2d at

476 (citing *United States v. Jensen,* 608 F.2d 1349, 1356 (10th Cir. 1979); *Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir. 1971)).  At the same time, an expert may refer to the law in expressing his opinion.  *Id.* (citing *Specht v. Jensen,* 853 F.2d 805, 809 (10th Cir. 1988)).

First, the Court agrees that Mr. Clark's conclusions that Defendants Salazar and Esparza acted contrary to law and background information regarding various aspects of the ADA are legal conclusions which usurp the jury's role as factfinder.  These questions of law are the subject of the Court's instructions and not the subject of expert testimony and, as such, the Court finds them inadmissible.  *A.E.*, 936 F.2d at 476; *Moriarty*, 931 F. Supp. 2d at 1163.

As for the remainder of Mr. Clark's report, Mr. Clark opines that Defendants Salazar and Esparza's use of force was unnecessary and unjustified based on EDPS policy and police training standards.  (Doc. 110-1) at 6–7.  Indeed, Mr. Clark states that, as trained law enforcement officers, both defendants should have known that Mr. Martinez was paraplegic and responded according to EDPS policy and training.  *Id.*  Based on Mr. Clark's experience and expertise in police training, Mr. Clark states that they failed to do so, and that the resulting use of force was inappropriate.  *Id.*  This is entirely proper, as an expert in police customs and practices is generally allowed to opine as to whether conduct falls below these standards.  *Zuchel v. City & Cty. of Denver, Colo.*, 997 F.2d 730, 742–43 (10th Cir. 1993) (affirming district court's admission of testimony by expert in police training and use of force on whether defendant's conduct violated standard police practices).

While Mr. Clark does use language such as "excessive" and "unnecessary" when describing Defendants Salazar and Esparza's use of force, the Court does not find that such language requires the exclusion of the testimony in its entirety.  First, in analyzing an excessive force claim, the relevant question is whether Defendants Salazar and Esparza were "objectively

reasonable in light of the surrounding facts and circumstances." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997). Mr. Clark does not use such language, and counsel shall guard against his use of these terms at trial. In addition, the Court's review of the report confirms that Mr. Clark couches the terms "unnecessary" and "excessive" in light of EDPS and general police custom and procedure, not necessarily the United States Constitution. *Zuchel*, 977 F.2d at 742–43 (holding that expert testimony was properly admitted where expert did not give an opinion on whether defendant's conduct was unconstitutional, but rather inappropriate in light of generally accepted police custom and practice). Furthermore, as analyzed above, Mr. Clark's conclusions that Defendants Salazar and Esparza used unnecessary and excessive force are not based on speculation, but based on the undisputed facts of this case, namely that Mr. Martinez was paraplegic and could not move his lower body. *Cf. Moriarty*, 931 F. Supp. 2d at 1163 (excluding expert testimony that comprised nothing but legal conclusions and appeared to be based on speculation not rooted in the undisputed facts of the case); *see supra* pp. 7–10.

In sum, the Court will exclude any testimony that Defendants Salazar and Esparza acted contrary to law. In addition, the Court will exclude any testimony by Mr. Clark regarding general background of the ADA. The remainder of Mr. Clark's testimony, however, will not be excluded on these grounds.

### c. *Mr. Clark's Testimony Regarding National Police Practices*

Defendants next argue that the Court should also exclude Mr. Clark's opinions that Defendants Salazar and Esparza failed to follow nationally recognized police procedures and customs. Defendants maintain that expert testimony regarding departures from established standards of police procedure are irrelevant to Fourth Amendment excessive force claims, and that the testimony should therefore be excluded. Defendants further contend that, even if the

Court were to find this testimony relevant, it should be excluded under Fed. R. Evid. 403, as the introduction of such standards could confuse and mislead the jury into applying the wrong evidentiary standard in its deliberation.

Plaintiff responds that the Tenth Circuit permits the use of general policing standards by experts in excessive force cases, and that the cases Defendants cite to the contrary are distinguishable from the facts at bar.  In addition, Plaintiff contends that, even if the Court were to find that Mr. Clark's testimony regarding policing standards is irrelevant to Plaintiff's Fourth Amendment excessive force claim, the testimony is certainly relevant to Plaintiff's other claims, including her state law and related supervisory liability claims, and failure to accommodate under the ADA.

"The Tenth Circuit has affirmed both the admission and exclusion of expert testimony on nationally accepted police practices."  *United States v. Rodella*, No. CR 14-2783 JB, 2014 WL 6634310, at *18 (D.N.M. Nov. 19, 2014) (comparing *Zuchel,* 997 F.2d at 742–43 (affirming district court's admittance of expert testimony on generally accepted police customs and practices), with *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1221–22 (10th Cir. 2005) (affirming district court's exclusion of expert testimony on well-established police procedures)). Several courts have relied on *Zuchel* for the proposition that expert testimony of nationally accepted police practices may be admitted in excessive force cases to show that a defendant's conduct violated those standards.  *Rodella*, 2014 WL 6634310, at *18 (collecting cases).  On the other hand, courts have relied on *Marquez* in order to exclude such testimony.  *Id*. at *19 (collecting cases).  Additionally, the Tenth Circuit and this District have often excluded expert testimony regarding local or generally accepted police standards.  *Rodella*, 2014 WL 6634310, at *26 (noting that relevance and confusion concerns are same for both nationally accepted police

15

standards and local standard operating procedures); *Tanberg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005); *L'Esperance v. Mings*, No. CIV-02-0258 MCA/RLP, 2003 WL 25692557, at *4 (D.N.M. July 14, 2003); *Buck v. City of Albuquerque, et al.*, No. CV 04-1000 WPJ/DJS, 2009 WL 4263562, at *3 (D.N.M. Nov. 16, 2009); *Chamberlin v. City of Albuquerque, et al.*, No. CIV 02-0603 JB/ACT, at *3–7 (D.N.M. July 31, 2005) (unpublished).

    In excluding both national and local police standards, courts have reasoned that evidence of a violation of police standards is irrelevant to whether an individual officer used excessive force in an arrest. *Tanberg*, 401 F.3d at 1163–64. The *Tanberg* Court noted that "[the Tenth Circuit] has consistently held that the violation of police regulations is insufficient to ground a [Section] 1983 action for excessive force." *Id*. at 1163. Indeed, the issue in Fourth Amendment excessive force cases is whether, under the totality of the circumstances, an officer's use of force was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This test involves viewing the reasonableness of an officer's use of force from an "on-scene" perspective. *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "The fact that an officer did not comply with his or her employer's standard operating procedures and training [ ] does not necessarily mean that the officer's conduct was 'unreasonable' under the Fourth Amendment." *L'Esperance*, 2003 WL 25692557, at *4 (citing *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001)). "Thus, a party may not use evidence of standard operating procedures [or] training [ ] in order to supplant the legal standard of objective reasonableness that has been defined by the Supreme Court and the Tenth Circuit . . . ." *Id*.; *see e.g., Tanberg*, 401 F.3d at 1163–64; *Buck*, 2009 WL 4263562, at *3.

    In reconciling these two lines of cases, courts have noted that *Zuchel* involved municipal

16

liability claims against the City of Denver for inadequate training, which was a direct cause of the individual police officer's unjustifiable use of force.  997 F.2d at 733; *see also Ortega v. City & Cty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 438579, at *3–5 (D. Colo. Feb. 5, 2013) (stating that Tenth Circuit had "repeatedly permitted expert testimony on whether departmental policies comply with generally accepted practices when municipal liability is at stake").  On the other hand, *Marquez*, *Tanberg*, and their progeny include only Section 1983 excessive force claims against the individual police officers alleged to have used unjustifiable force.  399 F.3d at 1219–20; 401 F.3d at 1154 .  Thus, while national and generally accepted police practices may be relevant to proving a claim resting on municipal or supervisory liability, those same standards are not relevant to whether an individual officer acted reasonably under certain circumstances.  *See, e.g., L'Esperance*, 2003 WL 25692557, at *4  (excluding evidence of standard operating procedures and noting that there is no pending claim against municipality for improper training or supervision); *Buck*, 2009 WL 4263562, at *3  (noting that general police practices may be relevant to municipal liability claim); *Ortega*, 2013 WL 438579, at *3–5.

Here, considering the most recent Tenth Circuit precedent and cases interpreting it, the weight of authority favors excluding Mr. Clark's testimony on whether Defendants Salazar and Esparza followed police policies and practices as it relates to Plaintiff's excessive force claim under Section 1983.  However, Defendants do not ask the Court to exclude this evidence as to Plaintiff's remaining claims.[4]  Indeed, case law supports the use of references to any national or local policing policies and standards in relation to Plaintiff's state law claims and municipal

---

[4] As Plaintiff notes, all case law cited in connection with Defendants' argument excluded national and local police standards in connection with Section 1983 claims, exclusively.  In addition, Defendants do not respond to Plaintiff's contention that evidence of national and local policing standards is relevant to her remaining claims in their reply brief.  *See* (Doc. 119) at 15; (Doc. 128) at 12.

claims against EDPS and the City of Espanola under the ADA.  *Zuchel,* 997 F.2d at 742–43;

*L'Esperance*, 2003 WL 25692557, at *4 (excluding evidence of standard operating procedures

and noting that there is no pending claim against municipality for improper training or

supervision); *Buck*, 2009 WL 4263562, at *3 (noting that general police practices may be

relevant to municipal liability claim); *Ortega*, 2013 WL 438579, at *3–5 (stating that Tenth

Circuit has "repeatedly permitted expert testimony on whether departmental policies comply

with generally accepted practices when municipal liability is at stake"); *Rodella*, 2014 WL

6634310, at *24–26.  In addition, the Tenth Circuit has acknowledged that standard operating

procedures may be relevant to Defendants Salazar and Esparza's liability under Plaintiff's state

law claims, including assault, battery, and false arrest.  *Tanberg*, 401 F.3d at 1157–59, 1164.

　　　　Furthermore, this evidence does not warrant exclusion under Rule 403.  The Court

acknowledges that, in admitting this testimony in connection with Plaintiff's remaining claims,

there is a risk that the jury will improperly consider the testimony in connection with Plaintiff's

excessive force claims under Section 1983.  However, this risk can be sufficiently reduced with a

limiting instruction at trial.  Hence, the Court will instruct the jury to consider this evidence only

to decide the issues of municipal liability under the ADA and theories of liability under the

NMTCA.  *See Zuchel*, 997 F.2d at 743; *Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1084

(10th Cir. 2010) (upholding district court's evidentiary ruling where evidence was relevant to

claims and court gave appropriate limiting instructions as to relevance of evidence); *The SCO*

*Grp., Inc. v. Novell, Inc.*, 439 F. App'x 688, 695 (10th Cir. 2011) (holding that risk of prejudice

was significantly reduced by court's limiting instruction); *see also United States v. Jones*, 530

F.3d 1292, 1299 (10th Cir. 2008) ("[W]e presume that juries follow limiting instructions.")

(internal citations and quotations omitted).  The Court further notes that, at trial, Plaintiff must

establish that any testimony on police standards is specifically relevant to her theory of
municipal liability under the ADA and her state law claims.  In light of this, the Court determines
that the probative value of nationally accepted and local police standards to both Plaintiff's
municipal claims under the ADA and her state law claims is not substantially outweighed by the
danger of unfair prejudice or confusing the jury.  Accordingly, the Court finds that, at this time,
while Mr. Clark's testimony on standard police practices is not relevant to Plaintiff's excessive
force claims under Section 1983, it is relevant and admissible as to Plaintiff's state law claims
and municipal ADA claims.

### d.  Mr. Clark's Testimony on "Less Intrusive" or "Less Forceful" Alternatives

Finally, Defendants seek to exclude testimony that Defendants Salazar and Esparza used
constitutionally unjustifiable force because "less intrusive" or "less forceful" alternatives were
available.  As grounds, Defendants maintain that whether a police officer could have used "less
intrusive" or "less forceful" means is irrelevant to the reasonableness analysis under the Fourth
Amendment.  Plaintiff responds that Mr. Clark is not offering testimony regarding the "least
intrusive means" available to police, or suggesting that such a test may be used to evaluate the
reasonableness of Defendants Salazar and Esparza's actions.

The Tenth Circuit has held that whether a police officer used more than a minimum
amount of force than necessary, or failed to use less intrusive means, in detaining a suspect, is
irrelevant to the question of whether that officer acted "reasonably" under the Fourth
Amendment.  *Marquez*, 399 F.3d at 1221–22.  This is because "the reasonableness standard does
not require that officers use 'alternative less intrusive means.'"  *Medina*, 252 F.3d at 1133 (citing
*Illinois v. Lafayette,* 462 U.S. 640, 647–48 (1983)).  If courts were to "consider the expert's
assertions regarding the failure to use [less intrusive means], we would be evaluating the

officer's conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene." *Id.*

Plaintiff argues that *Marquez* is inapposite to this case.  There, the plaintiff's expert based his opinion on the theory that only the least intrusive means of detention were reasonable. *Marquez*, 399 F.3d at 1221–22.  Here, on the other hand, Mr. Clark opines that "all issues [between Mr. Martinez and the officers] were easily resolved by 'Officer presence and/or Verbal Skills' methods.  Officer Salazar failed to use the required more reasonable (less forceful) methods when dealing with Mr. Martinez."  (Doc. 110-1) at 7.  Mr. Clark further states that "office[r] presence and de-escalation tactics would have sufficed."  *Id.*  Plaintiff further maintains that such testimony is relevant to the issues presented because "the excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case."  *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).  Additionally, "it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance."  *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007).

However, Plaintiff does not explain why the reasoning underlying the decisions in *Marquez* and *Medina* does not apply here.  Indeed, Mr. Clark's testimony seems to fall squarely within the type of testimony which involves "evaluating the officer's conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene."  *Medina*, 252 F.3d at 1133.  Nor does Plaintiff provide any cases in which a court admitted testimony of available "less intrusive" means in an excessive force case against individual defendants.

Moreover, the cases applying and interpreting the reasoning in *Marquz* and *Medina* have excluded such evidence on the grounds that expert testimony regarding an individual defendant's failure to use "alternative less intrusive" means is irrelevant to the reasonableness analysis under the Fourth Amendment.  *See e.g. L'Esperance*, 2003 WL 25692557, at *4 (holding that evidence of less intrusive alternatives to force is not relevant to reasonable analysis under Fourth Amendment, and that any marginal relevance is substantially outweighed by danger of unfair prejudice, confusion of issues, and misleading jury); *Chamberlin*, No. CIV 02-0603 JB/ACT, at *3 – 4 (excluding any evidence of standard operating procedures regarding lesser intrusive alternative methods of force); *Taylor v. Hudson et al.*, No. CIV 02-0775 JB/RHS, at *10–12 (D.N.M. Nov. 21, 2003) (unpublished) (interpreting Tenth Circuit law to state that evidence of less intrusive alternatives to force is irrelevant to Fourth Amendment reasonableness inquiry and thus inadmissible); *Ornelas v. Lovewell*, No. 11-2261-JAR-KMH, 2013 WL 3271016, at *6–7 (D. Kan. June 27, 2013), *aff'd,* 613 F. App'x 718 (10th Cir. 2015) (excluding testimony that defendant could have used less intrusive alternative to force used, as such evidence is irrelevant to Fourth Amendment excessive force claim).

As a result, this Court similarly finds that, under Tenth Circuit precedent, evidence of less intrusive alternatives to Defendants Salazar and Esparza's use of force is not relevant to the question of whether they acted reasonably under the circumstances.  Accordingly, Mr. Clark's testimony to that effect must be excluded.

In sum, for the foregoing reasons, Defendants' First Motion in Limine will be GRANTED IN PART and DENIED IN PART.

### 2.   *Defendants' Second Motion in Limine*

In Defendants' Second Motion in Limine, Defendants argue that Mr. Clark's opinions

with regard to Defendants' liability under the ADA and related inadequate police procedures are speculative and otherwise lack proper foundation, and that those opinions should be excluded.  In particular, Defendants first contend that the ADA is inapplicable to the facts presented here under the "exigent circumstances exception."  Second, they argue that Mr. Clark otherwise fails to properly support his opinions on inadequate police policies and procedures.  Plaintiff responds that the "exigent circumstances exception" to the ADA has not been adopted in this Circuit and that, in any event, the facts of this case do not fall within the exception.  Further, Plaintiff maintains that Mr. Clark sufficiently supports his opinions that here were inadequate policies and oversight within EDPS.

As an initial matter, Defendants assert that Mr. Clark cannot opine on whether Defendants violated the ADA for failure to accommodate Mr. Martinez's disability during the encounter.  Defendants reason that, "Title II [of the ADA] does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life."  *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000). Defendants make this same argument as grounds for dismissing Plaintiff's ADA claims in their First Motion for Partial Summary Judgment Against Plaintiff Russell Martinez ("First MSJ"). (Doc. 112).  Because these arguments are identical, and challenge the merits of Plaintiff's ADA claims, the Court finds that it is more appropriate to consider them in the context of Defendants' First MSJ.  As a result, the Court will not exclude Mr. Clark's ADA testimony for these reasons at this time.  The Court will now turn to whether Mr. Clark's opinions on inadequate police policies and procedures are purely speculative and, thus, improper testimony.

"In its gatekeeper role, a court must assess the reasoning and methodology underlying an expert's opinion, and determine whether it is both scientifically valid and relevant to the facts of the case, *i.e.,* whether it is helpful to the trier of fact." *Rodella*, 2014 WL 6634310, at *9 (citing *Daubert*, 509 U.S. at 594–95; *Witherspoon v. Navajo Ref. Co., LP,* No. CIV 03–1160 BB/LAM, 2005 WL 5988649, at *2 (D.N.M. July 18, 2005)).  In doing so,"[t]he court must reject unsupported speculation as well as testimony that is based on unreliable methodology." *Vigil v. Burlington N. & Santa Fe Ry. Co.*, 521 F. Supp. 2d 1185, 1204 (D.N.M. 2007) (citing *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 815–16 (7th Cir. 2004); *Brown v. Am. Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir. 1991)).  Opinions are pure speculation when they are not based on sufficient facts or data, and must be excluded as unreliable under Fed. R. Evid. 702. *Id*. at 1205 (citing *Gibson v. Norfolk S. Corp.,* 878 F. Supp. 1455, 1460 (N.D. Ala. 1994). Indeed, "neither *Daubert* nor the Federal Rules of Evidence 'require[ ] a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (citing *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).  As a result, the Court is free to conclude that "there is simply too great an analytical gap between the data and the opinion proffered," and within its discretion to exclude such evidence.  *Id*.

Here, Mr. Clark opines that both Defendants Salazar and Esparza should have been trained on the requirements of the ADA, that they should have considered Mr. Martinez as disabled, and that they should have accommodated Mr. Martinez during the encounter.  (Doc 111-1) at 7:5–6.  Mr. Clark goes on to say that "[t]he [EPDS] through its chain of command appears to have endorsed the dangerous out-of-policy tactics that are connected to this incident. As such, their collective approval of these tactics puts the general public at unnecessary future

risk of death and/or injury from their personnel who have been, or are now, similarly trained and/or supervised." *Id.* at 8.  However, Mr. Clark provides no further explanation as to how he reached this conclusion.  While Mr. Clark describes portions of Title II of the ADA, and states that he has reviewed EDPS general orders and training documentation for Defendants Salazar and Esparza, Mr. Clark does not offer any methodology or analysis which would connect these facts to his conclusion.  *Id.* at 1–2, 9–12.  For instance, there is no indication whether Defendants Salazar and Esparza received training on ADA requirements, whether any training was inadequate, or whether they failed to apply their training on the scene.[5]

Indeed, Mr. Clark provides no methodology or explanation to support his analytical leaps from the orders, training, and law, to "out-of-policy tactics" which " put[ ] the general public at unnecessary risk . . . of death and/or injury." *Id.* at 8.  As a result, the Court finds that his related opinions are speculative and, thus, unreliable under FED. R. EVID. 702.  Therefore, Mr. Clark's opinions as to inadequate police policies and procedures under the ADA are inadmissible.

In conclusion, Defendants' Second Motion in Limine will be GRANTED IN PART and DENIED IN PART.

### IV.    Conclusion

In light of the foregoing, IT IS THEREFORE ORDERED that the Court will:

(1) GRANT Plaintiff's Motion in Limine to Exclude the Expert Testimony of

Raymond J. Rael and Memorandum in Support, (Doc. 103);

---

[5] Plaintiff argues that Mr. Clark refers to testimony from former EDPS Chief Lee Montoya regarding the failure to document and track Taser use and use-of-force incidents to support his conclusion that there are inadequate polices and oversight at EDPS.  However, as Defendants make clear in their reply brief, they seek only to exclude Mr. Clark's opinions on policies related to the ADA, not Defendants' use of force.  (Doc. 129) at 9–10.

(2) GRANT IN PART and DENY IN PART Defendants' First Motion in Limine to Exclude the Opinion Testimony of Plaintiff's Expert Roger A. Clark, (Doc. 110); and

(3) GRANT IN PART and DENY IN PART Defendants' Second Motion in Limine to Exclude the Opinion Testimony of Plaintiff's Expert Roger A. Clark.  (Doc. 111).


_____
UNITED STATES DISTRICT JUDGE