IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JACKIE MARTINEZ, as Personal
Representative on behalf of the
Estate of Russell Martinez,

    Plaintiff,

vs.                                                                                                    Civ. No. 14-534 KG/WPL

JOSEPH SALAZAR, in his individual
capacity, GREG ESPARZA, in his
individual capacity, THE ESPANOLA
DEPARTMENT OF PUBLIC SAFETY,
LEO MONTOYA, and THE CITY OF
ESPANOLA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Joseph Salazar, Greg Esparza, the Espanola Department of Public Safety, Leo Montoya, and the City of Espanola's ("Defendants'") Second Motion to Bifurcate and Memorandum ("Second Motion to Bifurcate"), filed on October 13, 2015. (Doc. 109). Plaintiff filed a response on October 29, 2015, and Defendants filed a reply on November 10, 2015. (Docs. 120 and 126). Having reviewed the Second Motion to Bifurcate and the accompanying briefs, the Court DENIES the Second Motion to Bifurcate.

**I.    Background**

This is a police excessive force case arising from interactions between Russell Martinez ("Mr. Martinez") and Defendants Joseph Salazar and Greg Esparza on May 11, 2012. Plaintiff originally filed this case on May 5, 2014, in the First Judicial District Court, County of Rio

Arriba, New Mexico.  (Doc. 1-1).  Defendants removed the case to this Court on June 6, 2014.  (Doc. 1).  Subsequently, Plaintiff filed his First Amended Complaint for Damages Resulting from Civil Rights Violations, Intentional Torts, Negligence, and Violations of Title II of the Americans with Disabilities Act ("Amended Complaint").  (Doc. 88).[1]

In Count I of the Amended Complaint, Plaintiff brings 42 U.S.C. § 1983 excessive force claims against Espanola Police Department Officers Joseph Salazar and Greg Esparza ("Defendants Salazar and Esparza," or the "Individual Defendants").  (Doc. 88) at 5.  In Count II, Plaintiff brings New Mexico Tort Claims Act ("NMTCA") claims against Defendants Salazar and Esparza for the intentional torts of assault, battery, false arrest, and violation of the United States and New Mexico constitutions.  *Id.* at 5–6.  In addition, Plaintiff brings *respondeat superior* claims against the Espanola Department of Public Safety ("EDPS") and the City of Espanola (together, the "Municipal Defendants") for the intentional torts allegedly committed by Salazar and Esparza.  *Id.*  In Count III, Plaintiff brings state negligence claims against Joe Montoya ("Defendant Montoya"), the Director of the EDPS, for negligently hiring, training, and/or supervising Salazar and Esparza, and thereby causing Salazar and Esparza to commit the intentional torts listed in Counts I and II.  *Id.* at 6–7.  Plaintiff also alleges that the Municipal Defendants are liable for Defendant Montoya's negligent actions under *respondeat superior*.  *Id.* at 7.  Finally, in Count IV, Plaintiff asserts claims under Title II of the Americans with Disabilities Act ("ADA") against the Municipal Defendants for failing to reasonably accommodate Mr. Martinez's disability in the course of questioning, interacting with, and detaining him.  *Id*.

---

[1] On December 7, 2015, Plaintiff's Counsel filed a statement notifying the Court and the parties that Mr. Martinez had passed away.  (Doc. 139).  The Court then substituted Jackie Martinez ("Mrs. Martinez"), as personal representative of Mr. Martinez's estate, as the plaintiff in this case.  (Doc. 161).

On July 1, 2015, upon Defendants' motion, and before Plaintiff filed his Amended Complaint, the Court bifurcated the trial in this case into two phases. (Doc. 90). The Court ordered that the first phase of the trial will be limited to Counts I and II, and the second phase of the trial, if necessary, will occur immediately following the first phase, and will be limited to Count III.[2] *Id*. at 4–5. The Court also ordered that the same jury will adjudicate both phases of the trial. *Id*. at 5.

Defendants now move to bifurcate Plaintiff's ADA claim against the Municipal Defendants into the second phase of the trial. (Doc. 109) at 4–5. Defendants contend that bifurcating Plaintiff's ADA claim into the second phase of the trial would promote convenience, expediency, and economy, and would avoid prejudice against Defendants. Plaintiff opposes the Second Motion to Bifurcate. (Doc. 120).

**II.     Discussion**

Federal Rule of Civil Procedure 42(b) provides that a court may order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." A trial court has broad discretion in determining whether to bifurcate a trial under Rule 42(b). *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985). "Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims." *Desmare v. New Mexico*, 2007 WL 5231690, at *2 (D.N.M.) (citing *Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004)). Bifurcation, however, is improper if the issues are not separable, and should not be ordered routinely unless it is clearly necessary. *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 965 (10th Cir. 1993); *see*

---

[2] Counts I, II, and III of the Amended Complaint are exactly the same as Counts I, II, and III in Plaintiff's original complaint. Plaintiff amended his original complaint only to add Count IV against the Municipal Defendants under the ADA. *Compare* (Doc. 88) *with* (Doc. 1-1).

*Marshall v. Overhead Door Corp.*, 131 F.R.D. 94, 98 (E.D. Pa. 1990).  The party seeking bifurcation bears the burden of proving that bifurcation is proper "in light of the general principle that a single trial tends to lessen the delay, expense, and inconvenience."  *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010).

    A.  <u>*Convenience, Expediency, and Economy*</u>

Defendants argue that, because Plaintiff's ADA claim is alleged against the Municipal Defendants, it should be bifurcated from the claims against the Individual Defendants.  As grounds, Defendants contend that the Court has already ordered that Plaintiff's municipal and supervisory claims be bifurcated from the individual claims and that, to avoid a procedural anomaly, Plaintiff's ADA claim should be bifurcated as well.

However, the Court did not bifurcate Plaintiff's claims based on whether the claims were municipal or supervisory, or individual.  To the contrary, the Court bifurcated Counts I and II from Count III on the basis that the resolution of Counts I and II could obviate the need to try the Count III claims.[3]  Indeed, Count III alleges that Defendant Montoya's negligent hiring, training and/or supervising of Defendants Salazar and Esparza caused Defendants Salazar and Esparza to commit the constitutional violations and intentional torts alleged in Counts I and II.  (Doc. 90) at 3–4.  The Court reasoned that, if the jury were to find that Defendants Salazar and Esparza did not commit the constitutional violations and intentional torts alleged in Counts I and II, Defendant Montoya's alleged actions could not have proximately caused any harm to Plaintiff.  *Id*. at 3 (citing *Lopez v. Martinez*, 2014 WL 7187065, at ¶ 6 (N.M. Ct. App.)).  As a result, the negligence claims, as well as the corresponding *respondeat superior* claims, would fail, and there would be no need for the second phase of the trial.  *Id.*

---

[3] In fact, Plaintiff's supervisory claims against the municipalities under the NMTCA in Count II will be tried in the first phase of the trial.

This reasoning does not apply to Plaintiff's ADA claim.  The resolution of Plaintiff's ADA claim does not depend on a finding of liability by Defendants Salazar and Esparza as to Counts I and II.  Rather, Plaintiff's ADA claim involves an entirely different standard of liability, and does not incorporate aspects of the other claims alleged in the Amended Complaint.  Indeed, the issue in Fourth Amendment excessive forces cases is whether an officer's use of force was objectively reasonable.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  For ADA claims under Title II, on the other hand, a plaintiff must show that: (i) he is a qualified individual with a disability; (ii) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or the public entity otherwise discriminated against the plaintiff; and (iii) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  *Trujillo v. Rio Arriba Cty.*, No. CIV 15-0901 JB/WPL, 2016 WL 4035340, at *8 (D.N.M. June 15, 2016) (citing *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)).  As a result, a jury could find that Defendants Salazar and Esparza used a constitutionally justifiable amount of force in Counts I and II, but also find that they failed to reasonably accommodate Mr. Martinez's disability in the course of interacting with, questioning, and detaining him.  Thus, while resolution of Counts I and II could obviate the need to try Count III, Plaintiff's ADA claim in Count IV will be tried regardless of the outcome.  As a result, bifurcating Count IV into the second phase could potentially lengthen the trial.

Further, the resolution of Plaintiff's ADA claim requires much of the same evidence relevant to Plaintiff's excessive force claims.  "[B]ifurcation is improper if the issues are not separable."  *Angelo*, 11 F.3d at 964.  While Plaintiff's ADA claim is alleged against the Municipal Defendants, it is nevertheless premised upon Defendants Salazar and Esparza's conduct during the encounter with Mr. Martinez.  Indeed, in the context of ADA claims based on

police conduct, the claims hinge on law enforcement's treatment of a disabled individual in the course of an investigation, arrest, or detention.  *See Gohier*, 186 F.3d at 1220–21 (discussing ADA claims which may arise where police wrongly arrest individual with disability because police misperceived effects of disability as criminal conduct, or where police fail to accommodate persons' disability in court of investigation or arrest).

    As a result, in order to resolve Plaintiff's ADA claim, the jury will have to decide what exactly happened between Mr. Martinez and Defendants Salazar and Esparza on May 11, 2012. That is, the same witnesses, findings of fact, and credibility determinations relevant to Counts I and II will also have to be made with regard to the standard for liability under the ADA.  Plaintiff may then argue that the Municipal Defendants are liable for Plaintiff's injuries under a theory of vicarious liability or a failure to train or supervise.  *See id*. at 1222 (noting that plaintiff could have argued that Title II required municipality to better train its police officers to investigate and arrest persons with disabilities in manner reasonably accommodating their disability); *Doe v. Bd. of Cty. Comm'rs of Craig Cty.*, No. 11-CV-0298-CVE-PJC, 2011 WL 6740285, at *2 (N.D. Okla. Dec. 22, 2011) ("While the Tenth Circuit has not explicitly addressed the issue of *respondeat superior* liability under Title II of the ADA, other circuits . . . unanimously held that a municipal employer is vicariously liable for the acts of its employees who violate Title II of the ADA.").  This is not the case with Plaintiff's state negligent claims in Count III, which do not require a determination of the propriety of Defendants Salazar and Esparza's conduct under a separate theory of liability.  Rather, the state negligence claims rely completely on Defendants Salazar and Esparza's liability under Counts I and II.

In light of the foregoing, Defendants have not demonstrated that convenience, expediency, and economy favor bifurcating Plaintiff's ADA claim in Count IV into the second phase of the trial.

B. *Prejudice to Defendants and Plaintiff*

Defendants further argue that trying Plaintiff's ADA claim in the first phase of the trial with Counts I and II would be prejudicial to Defendants. Specifically, Defendants maintain that evidence specific to the complained-of ADA violations, including the Municipal Defendants' policies and procedures regarding ADA compliance, are irrelevant to the excessive force and tort claims against Defendants Salazar and Esparza, and will be prejudicial to those defendants.

The Court has acknowledged that a jury could erroneously consider the Municipal Defendants' policies and procedures regarding ADA compliance in connection with Plaintiff's excessive force claims under Section 1983. *See* (Doc. 213) at 18. However, this risk can be sufficiently reduced with a limiting instruction at trial. Hence, the Court will instruct the jury that evidence of the Municipal Defendants' policies and procedures are only to be considered in connection with their ADA compliance, and are not to be used to determine Defendants Salazar and Esparza's individual liability. *See Kretek v. Bd. of Commissioners of Luna Cty.*, No. CIV. 11-676 KG/GBW, 2014 WL 11621695, at *1–2 (D.N.M. Feb. 24, 2014) (finding that bifurcation of trial unnecessary when court will give appropriate limiting instruction to reduce any risk of prejudice or jury confusion); *The SCO Grp., Inc. v. Novell, Inc.*, 439 F. App'x 688, 695 (10th Cir. 2011) (holding that risk of prejudice was significantly reduced by court's limiting instruction); *see also United States v. Jones*, 530 F.3d 1292, 1299 (10th Cir. 2008) ("[W]e presume that juries follow limiting instructions.") (internal citations and quotations omitted).

Because the Court will give an appropriate limiting instruction to reduce any risk of prejudice or jury confusion, bifurcation of Plaintiff's ADA claim to the second phase of trial is not warranted under Rule 42(b).

### III. Conclusion

For the foregoing reasons, the Court finds that the purposes for bifurcation under Rule 42(b), i.e., "convenience, to avoid prejudice, or to expedite and economize," are not met here.

Accordingly, IT IS THEREFORE ORDERED that Defendants' Second Motion to Bifurcate and Memorandum, (Doc. 109), is DENIED.

_____
UNITED STATES DISTRICT JUDGE