IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JACKIE MARTINEZ, as Personal
Representative on behalf of the
Estate of Russell Martinez,

      Plaintiff,

vs.                                                                 Civ. No. 14-534 KG/WPL

JOSEPH SALAZAR, in his individual
capacity, GREG ESPARZA, in his
individual capacity, THE ESPANOLA
DEPARTMENT OF PUBLIC SAFETY,
LEO MONTOYA, and THE CITY OF
ESPANOLA,

      Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff Jackie Martinez's Motion for

Sanctions for Defendants' Failure to Preserve Taser Data ("Motion"), (Doc. 196), filed June 30,

2016; Defendants' Response to Plaintiff's Motion for Sanctions for Defendants' Failure to

Preserve Taser Data (Doc. 198); and Plaintiff's Reply in Support of Motion for Sanctions For

Defendants' Failure to Preserve Taser Data.  (Doc. 199).  The Motion came before the Court at a

hearing on January 19, 2017.  *See* (Doc. 221).  Having heard Counsels' argument and reviewed

the Motion and the accompanying briefs, the Court GRANTS IN PART and DENIES IN PART

the Motion.

## I.      Background

This is a police excessive force case arising from interactions between Russell Martinez

("Mr. Martinez"), a paraplegic, and Defendants Joseph Salazar and Greg Esparza on May 11,

2012.  Specifically, Plaintiff's First Amended Complaint for Damages Resulting from Civil Rights Violations, Intentional Torts, Negligence, and Violations of Title II of the Americans with Disabilities Act ("Amended Complaint") alleges that Espanola Police Department Officer Joseph Salazar responded to a 911 call reporting a domestic disturbance between Mr. Martinez and his wife in a Sonic parking lot.  Plaintiff claims that in investigating the incident, Defendant Salazar pulled Mr. Martinez from his car, beat him, and Tased him multiple times.  (Doc. 88).  Based on these allegations, the Amended Complaint alleges claims under 42 U.S.C. § 1983, the New Mexico Tort Claims Act ("NMTCA"), and the Americans with Disabilities Act ("ADA").

On August 6, 2012, Plaintiff sent the City of Espanola a letter describing the incident, including that Mr. Martinez was Tased by officers several times.  (Doc. 172-1) at 2.  The letter announced the intent to sue based on the events, and demanded that the City preserve all evidence, including electronically-stored information.  *Id*.  Plaintiff then filed suit on May 5, 2014.  (Doc. 1-1).

During discovery on October 6, 2015, Plaintiff moved to compel the production of electronic data from Defendant Salazar's Taser.  (Doc. 107) at 2–5.  Defendants could not identify the serial number for Defendant Salazar's Taser and, thus, the electronic information regarding Defendant Salazar's Taser use was effectively lost.  *Id*.  In response, Defendants claimed that the Safety Officer responsible for maintaining documents related to Taser issuance during the relevant time period left the Espanola Police Department, of the Espanola Department of Public Safety ("EDPS") in December 2011 under "acrimonious circumstances," and "took all records maintained by him."  (Doc. 142) at 2.  As a result, Defendants maintained that they had not acted in bad faith, and that the records simply could not be found or were not in their possession.  *Id*.

The Honorable William P. Lynch found this argument unpersuasive, as the records showed that Defendant Salazar was hired in February 2012, at least two months after the Safety Officer could have retired and absconded with the records. *Id*. (citing (Doc. 124-1)). Because Defendants had affirmatively stated that Defendant Salazar's Taser is likely still being used in the field, Judge Lynch ordered that Defendants conduct a search of all Tasers within their possession and all Taser data to which they have access in an effort to locate the Taser used by Defendant Salazar on May 11, 2012. *Id*. Defendants produced electronic data for 29 Tasers, but because several Tasers had their internal calendars and clocks reset, and because the serial number of Defendant Salazar's Taser remains unknown, it appears that none of the data could be definitively linked to the May 11, 2012, incident. (Doc. 172) at 3–5.

Subsequently, Plaintiff moved for a Fed. R. Civ. P. 30(b)(6) deposition regarding Defendants' efforts to preserve Defendant Salazar's Taser data, to which Defendants consented. (Docs. 172, 177, & 192). Plaintiff deposed Francisco Galvan, Records Supervisor and Evidence Custodian at EDPS ("Mr. Galvan"), who the City of Espanola designated to testify on its behalf. (Doc. 196-1). Mr. Galvan testified, and Defendants acknowledge, that the City received the letter on August 6, 2012, and scanned it into a Laserfiche records management system, but never conveyed the letter to him or EDPS. *Id*. at 9:6–10, 12–18, 11:13–12:16, 30:24–31:1, 31:22–32:7. As a result, no litigation hold or effort to preserve evidence was made upon receiving the August 6, 2012, letter. *Id*. at 31:12–32:23.

In addition, Mr. Galvan testified that, had he received the letter, he only would have placed a copy of the letter in the evidence locker related to this incident. (Doc. 196-1) at 49:17–50:3. He also testified that, because Defendant Salazar used the Taser in "drive-stun" mode, the Taser did not deploy a cartridge, which would normally be placed in the evidence locker. (Doc.

198-2) at 40:1–14.  As a result there was no cartridge to preserve.  *Id*.  Mr. Galvan further testified that neither he, nor anyone else, would have made any effort to locate the serial number of Defendant Salazar's Taser, or preserve any of the associated electronic data.  (Doc. 196-1) at 51:15–20.  Mr. Galvan also noted that Defendant Salazar failed to complete a Taser Use Report, documenting his use of the Taser during the incident, in violation of EDPS policy.  *Id*. at 45:12–46:4.  It appears that Defendant Salazar has never completed a Taser Use Report during his tenure as an EPD officer.  *Id*.

Plaintiff then filed the instant Motion seeking sanctions against Defendants the City of Espanola, EDPS, and Joseph Salazar for their failure to take any action to preserve Defendant Salazar's Taser Data.  (Doc. 196).  Plaintiff maintains that Defendants' complete failure to take any steps to preserve evidence in this case favors a finding of bad faith, and that Plaintiff has been prejudiced by this failure.  *Id*. at 4–7.  As a result, Plaintiff asks this Court to give a permissive adverse inference instruction to the jury at trial, and to award Plaintiff costs and fees related to her efforts to discover Defendant Salazar's Taser data.  *Id*. at 9–10.

Defendants oppose the Motion in its entirety, and argue that there can be no finding of bad faith in this case.  (Doc. 198).  It is Defendants' position that the destruction or loss of Defendant Salazar's Taser data is the result of sloppy paperwork amounting only to negligence and that, as a result, sanctions would be improper.  While Defendants admit that no litigation hold was placed as a result of the letter, they maintain that had a litigation hold been instituted, the Taser data would still not have been available.  Specifically, Defendants assert that, had he received the preservation letter, Mr. Galvan would only have placed copy of the letter in the evidence locker associated with this case.  Because Defendant Salazar used the Taser in "drive-stun" mode, the Taser did not deploy a cartridge, which would normally be kept in the evidence

locker.  Thus, Defendants argue there was no evidence to preserve.  Defendants state that they would have made no other effort to identify the serial number of the Taser used by Defendant Salazar.

## II.      The Law on Spoliation

"Spoliation is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379-RDR, 2012 WL 2370110, at *1 (D. Kan. June 21, 2012) (citing *Sch.-Link Techs., Inc. v. Applied Res., Inc.*, No. CIV.A. 05-2088-JWL, 2007 WL 677647, at *3–4 (D. Kan. Feb. 28, 2007)).  To prevent spoliation, litigants are under an "obligation to preserve evidence . . . when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

Generally, the rule is that "'[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents'" and other tangible evidence.  *Browder v. City of Albuquerque*, No. CIV 13-0599 RB/KBM, 2016 WL 3397659, at *4 (D.N.M. May 9, 2016) (citing *United States ex rel. Baker v. Community Health Systems et al.*, No. CIV. 05-279 WJ/ACT, 2012 WL 12294413, at * 3 (D.N.M. Aug. 31, 2012) *and Jordan F. Miller Corp. v. Mid-Continent Aircraft Service Inc.*, 139 F.3d 912, at *3 (10th Cir. Feb. 20, 1998)).  However, "[a] party's discovery obligations do not end with the implementation of a 'litigation hold'—to the contrary, that's only the beginning." *Baker*, 2012 WL 12294413, at *2 (internal citations omitted).  Indeed, merely notifying employees of a litigation hold is insufficient.  *Id*.  Rather,

"[c]ounsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched. *Id*. Counsel must also "talk to key employees in an effort to understand how evidence will be stored, to continually ensure that the party is preserving relevant evidence." *Browder*, 2016 WL 3397659, at *4 (citing *Baker*, 2012 WL 12294413, at *2).

Where a party fails to fulfill its duty to preserve evidence, federal courts have the inherent authority to fashion an appropriate sanction. *See Baker*, 2012 WL 12294413, at * 3; *Browder*, 2016 WL 3397659, at *4. Indeed "[f]ederal courts possess inherent powers necessary 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[,]'" including imposing sanctions. *Browder*, 2016 WL 3397659, at *4 (citing *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service Inc.*, 139 F.3d 912, at *3 (10th Cir. Feb. 20, 1998)). "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)). In fashioning a spoliation sanction, the two most important factors the Court considers are (1) culpability of the offending party, and (2) actual prejudice to the other party. *Browder*, 2016 WL 3397659, at *6 (citing *Baker*, 2012 WL 12294413, at *12).

Where evidence was lost or destroyed due to negligence, sanctions may include: an award of attorney fees; excluding evidence or striking part of a party's proof; or allowing the aggrieved party to question a witness in front of the jury about the missing evidence. *See Browder*, 2016 WL 3397659, at *4; *Baker*, 2012 WL 12294413, at *12; *Dalcour v. City of Lakewood*, 492 F. App'x 924, 937–38 (10th Cir. 2012); *Henning v. Union Pac. R. Co.,* 530 F.3d

1206, 1220 (10th Cir. 2008).  "But if the aggrieved party seeks an adverse inference to remedy

the spoliation, it must also prove bad faith."  *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d

1136, 1149 (10th Cir. 2009).  "Mere negligence in losing or destroying records is not enough

because it does not support an inference of consciousness of a weak case."  *Id*. (citing *Aramburu

v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)).

### III.     Discussion

####     A.  <u>*The Adequacy of the Litigation Hold*</u>

"When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that

allows a district court to exercise the discretion necessary to confront the myriad factual

situations inherent in the spoliation inquiry."  *Browder*, 2016 WL 3397659, at *5 (citing *Baker*,

2012 WL 12294413, at *4).  Here, on August 6, 2012, Plaintiff's counsel properly sent a letter to

the Mayor of the City of Espanola, pursuant to NMSA 1978, § 41-4-16, governing notice of

claims under the NMTCA.  (Doc. 172-1).  The letter described the alleged incident, including

that Mr. Martinez was beat and Tased by Espanola Police Department officers, stated that Mr.

Martinez intended to pursue state law tort and federal civil rights claims against the City of

Espanola and its employees, and demanded that relevant evidence, such as electronically-stored

information, be preserved.  *Id*.  Defendants acknowledge that the City of Espanola received the

letter and recorded it into its records management system.  Thus, there is no doubt that

Defendants had actual notice that litigation regarding the encounter between Mr. Martinez and

EDPS officers was reasonably foreseeable and, in fact, imminent.  *Browder*, 2016 WL 3397659,

at *5 (holding that counsel's letter to defendant stating intent to sue and request to preserve

evidence made it crystal clear that litigation was imminent).

As a result, from August 6, 2012, forward, counsel for the City had a duty to ensure that

the City, EDPS, and its employees preserved all evidence relevant to the encounter with Mr. Martinez.  However, although  the City received the letter on August 6, 2012, and scanned it into a Laserfiche records management system, the letter was never forwarded or conveyed to EDPS or any other appropriate officials.  (Doc. 196-1) at 9:6–10, 12–18, 11:13–12:16, 30:24–31:1, 31:22–32:7.  As a result, no litigation hold, or any other effort to preserve evidence, was made upon receiving the August 6, 2012, letter.  *Id*. at 31:12–32:23.

Subsequently, Defendant Salazar resigned from EDPS on September 13, 2012.  (Doc. 172-2) at 29:21–30:11.  It appears he did so without completing a Taser Use Form after using his Taser while on duty, in violation of EDPS policy.  (Doc. 196-1) at 45:12–46:4.  Upon his resignation, Defendants made no effort whatsoever to obtain those records, or otherwise make note of the Taser he used while on the force.  *Id*. at 51:15–20.  Defendants now contend that there are simply no records memorializing which Taser Defendant Salazar used on May 11, 2012, and thus the data on the use of the Taser is unavailable.  *See* Rough Transcript of Hearing at 14–15 (taken January 19, 2017) ("Tr.").[1]

Because the City failed to distribute the August 6, 2012, preservation letter to appropriate officials, failed to institute a litigation hold, and failed to otherwise preserve evidence relevant to the incident, the Court finds that Defendants failed to fulfill its duty.  Indeed, Defendants appear to concede as much.  (Doc. 198) at 8–9.

B.  *Spoliation Sanctions*

Having determined that Defendants have not fulfilled their duty to preserve evidence, the Court will now consider whether spoliation sanctions are warranted, in light of Defendants' culpability and the prejudice to Plaintiff.  *Browder*, 2016 WL 3397659, at *6.

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

  *1. Culpability*

"Culpability is the degree of fault to be assigned to the offending party." *Baker*, 2012 WL 12294413, at *12. "[T]he destruction of potentially relevant evidence obviously occurs along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." *Browder*, 2016 WL 3397659, at *6 (internal citations omitted).

Courts have noted that "[t]here are very few instances where courts have clearly defied the continuum of culpability 'in the context of discovery misconduct.'" *Id*. at 5 n.4 (citing *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 463 (S.D.N.Y. 2010) (*abrogated on other grounds by Chin v. Port Auth. Of N.Y.*, 685 F.3d 135 (2d Cir. 2012)). Generally, however, in order for a party to have acted in bad faith, there must be some showing of willful destruction of evidence, such as actively deleting electronic information or other documents. *Id*. at 8 n.6 (collecting cases). Gross negligence, on the other hand, has been described "'as a failure to exercise even that care which a careless person would use.'" *Id*. at 5 n.4 (citing *Pension Comm.*, 685 F. Supp. 2d at 463).

The facts as they appear before the Court demonstrate that, from at least August 6, 2012, forward, Defendants had a duty to ensure that all evidence relevant to the incident on May 11, 2012—including that in possession of individual police officers such as Defendant Salazar—be preserved. Defendants were also on actual notice that Espanola police officers were alleged to have Tased Mr. Martinez. Despite this, Defendants concede that the City of Espanola never distributed the preservation letter through the appropriate channels and, as a result, failed to institute any form of a litigation hold, or otherwise make an effort to preserve evidence related to this case. In addition, the record reflects that Defendant Salazar failed to fill out and submit Taser Use Reports in connection with this incident, and apparently others, in violation of EDPS

policy.   Nevertheless, Defendant Salazar was able to resign from EDPS without leaving any record of the Taser he used during his time on the force.

Plaintiff urges that this Court may infer bad faith on the part of Defendants from the totality of the circumstances of this case.  Plaintiff argues that in *Swofford v. Eslinger*, the Court inferred bad faith on the part of a defendant sheriff's office when it failed to take any steps to preserve relevant evidence of a police shooting.  671 F. Supp. 2d 1274, 1281 (M.D. Fla. 2009).  There, the Court also questioned the veracity of the various defendants' testimony regarding the spoliation of the evidence, noting that the "less than candid" responses regarding their duty to preserve evidence supported a finding of bad faith.  *Id.* at 1283–84.  Plaintiff argues that, considering Defendants' arguments and conduct throughout the litigation, these facts are highly analogous to the case at bar.

However, the facts of *Swofford* are distinguishable from this case.  Indeed, in *Swofford*, the record reflected that several officials had received a preservation letter requesting that certain officers' firearms be preserved, and that two of those officials were directly responsible for the destruction of those firearms, and the resultant spoliation of evidence.  *Id.* at 1281.  In finding that the sheriff's office acted in bad faith, the Court noted that these senior officials had received the letter and preservation request, but nevertheless had knowingly collected the identified firearms for their destruction.[2]  *Id.*

Here, there is no showing that any senior officials at the City of Espanola or EDPS received the August 6, 2012, preservation letter, knowingly and intentionally disregarded the

---

[2] The *Swofford* Court ultimately did not impose sanctions for the spoliation of the firearm evidence on the grounds that it was unclear whether the firearms were relevant to the plaintiff's claims.  671 F. Supp. 2d at 1286.  The Court nevertheless relied heavily on the defendants' behavior with regard to the destruction of the firearms in finding that the defendants acted in bad faith, and noted that it would reconsider its ruling upon a showing of relevance and prejudice to the plaintiff's case.  *Id.* at 1281–82, 1286.

letter, and allowed for the data from Defendant Salazar's Taser to be destroyed.  *See Browder*, 2016 WL 3397659, at *6–8 (declining to find bad faith where defendants made no effort to preserve evidence, but did not intentionally destroy relevant evidence).  Rather, the record before the Court demonstrates that, despite receiving the August 6, 2012, preservation letter, Defendants failed to forward the letter to the appropriate parties within EDPS, and failed to institute a litigation hold or make any effort to preserve evidence relevant to this case.

Plaintiff further argues that, even if Defendants had properly instituted a litigation hold, Defendants concede that they would have made no effort to obtain or track down the serial number of Defendant Salazar's Taser in order to preserve its data.  However, regardless of whether Defendants would have made an effort to obtain and preserve the serial number to Defendant Salazar's Taser, the record before the Court remains devoid of any showing of a willful and intentional destruction of evidence in violation of Defendants' duty to preserve.  As a result, the Court is not inclined to find that Defendants acted in bad faith.

Defendants, on the other hand, contend that the loss of Defendant Salazar's Taser data is a result of "sloppy paperwork," amounting only to negligence.  (Doc. 198) at 8–9.  The Court does not agree with this characterization.  To the contrary, the record reflects that Defendants completely failed to respond to the August 6, 2012, preservation letter, allowed Defendant Salazar to resign from EDPS without having submitted the required Taser Use Forms, and apparently without any record connecting him to the Taser he used while he was an officer.  This leads the Court to find Defendants' efforts to preserve evidence in this case to be "woefully inadequate," and to go beyond sloppy paperwork or mere negligence.  *Baker*, 2012 WL 12294413, at *13.  Indeed, the totality of the circumstances suggests that Defendants collectively failed to exercise "even that care which a careless person would use," and that their conduct was

more akin to gross negligence. *Browder*, 2016 WL 3397659, at *5 n.4 (citing *Pension Comm.*, 685 F. Supp. 2d at 463). The Court acknowledges that it initially found Defendants to be negligent at the hearing. Tr. at 28–30. However, upon further consideration and for the reasons stated above, the Court amends its previous ruling and finds that Defendants were grossly negligent in failing to preserve potentially critical evidence.

### 2. Prejudice

Where a party is not found to have acted in bad faith, but otherwise fails to fulfill its duty to preserve evidence, "prejudice is shown when the destroyed evidence goes to a critical issue and the evidence at hand is conflicting." *Baker*, 2012 WL 12294413, at *14; *Browder*, 2016 WL 3397659, at *6.

Here, the evidence in question is the objective data from Defendant Salazar's Taser, which would indicate how many times Defendant Salazar used his Taser on Mr. Martinez during the encounter. There are currently conflicting accounts as to how many times Defendant Salazar Tased Mr. Martinez. Indeed, Defendant Salazar testifies that he used his Taser only once, whereas Mr. and Mrs. Martinez recall Defendant Salazar Tasing Mr. Martinez several times. *See* (Doc. 172-2) at 119:12–24; (Doc 172-9) at 25:10–27:16; (Doc. 172-10) at 23:11–24:12). The objective evidence from the Taser is relevant to whether Defendant Salazar used excessive force and, in addition, is crucial in determining the credibility of the witnesses, including both Defendant Salazar and Mr. Martinez. Because there is no other means to obtain this information, the loss of the Taser data is quite prejudicial to Plaintiff. Tr. at 14–15.

### 3. Sanctions

Having found that Defendants were grossly negligent in their failure to preserve evidence

related to the encounter between Defendant Salazar and Mr. Martinez, and that their failure prejudiced Plaintiff, the Court further finds that sanctions are warranted in this case.  Case law supports the imposition of sanctions in these circumstances.  Sanctions may include: an award of attorney fees; excluding evidence or striking part of a party's proof; or allowing the aggrieved party to question a witness in front of the jury about the missing evidence.  *See Browder*, 2016 WL 3397659, at *4; *Baker*, 2012 WL 12294413, at *12; *Dalcour*, 492 F. App'x at 937–38; *Henning*, 530 F.3d at 1220.  "In fashioning sanctions for spoliation of evidence, the Court is mindful of the purposes of such consequences: sanctions should punish, promote fact-finding accuracy, and compensate the aggrieved party."  *Browder*, 2016 WL 3397659, at *8 (citing *Baker*, 2012 WL 12294413, at *3).  In light of the foregoing, the Court finds the following sanctions appropriate:

(1) Plaintiff will be allowed to question Defendants during the course of the trial with regard to the missing Taser data.  The Court will require that Plaintiff's questioning be limited in scope to ensure that it does not detract from the main issues in this case.  At the hearing on January 19, 2017, Plaintiff's counsel suggested that the scope of questioning include: (i) Defendants' policies regarding officer Taser use and the Taser Use Form; (ii) whether Defendant Salazar followed these policies during his time with EDPS; (iii) that Plaintiff sent, and Defendants received, the August 6, 2012, preservation letter; (iv) that officials at EDPS never received the letter, and a litigation hold was never instituted; (v) that, had the appropriate officials at EDPS received the letter, they would not have done anything differently; and (vi) that there should otherwise be a record of the serial number of the Taser assigned to Defendant Salazar, but that Defendants have no such record.  Tr. 31–32.  At this time, the Court

13

finds this line of questioning to be appropriate, while also acknowledging that it was suggested without much notice at the hearing.  Thus, the Court will reserve ruling on other areas of questioning which also conform to this Order.  At trial, the Court may instruct jurors that they are allowed to make any inference they believe appropriate in light of the spoliation of the Taser data.  Counsel shall meet and confer to draft a proposed instruction they can agree on, and submit that instruction to the Court on or before February 15, 2017.  If counsel are unable to come to an agreement, the Court will consider each party's submission.

(2) Defendants will pay all reasonable expenses, including attorney fees, Plaintiff incurred in her attempts to locate Defendant Salazar's Taser data, and in bringing this Motion.  Plaintiff shall file an affidavit summarizing these expenses by February 3, 2017, at 5:00 p.m.

**IV.    Conclusion**

For the above-stated reasons, IT IS THEREFORE ORDERED that Plaintiff's Motion for Sanctions for Defendants' Failure to Preserve Taser Data, (Doc. 196), is GRANTED IN PART and DENIED IN PART, as outlined above.

UNITED STATES DISTRICT JUDGE